Philip A. FOLEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16552.

United States Court of Appeals
Eighth Circuit.

May 12, 1961.

Rehearing Denied June 7, 1961.

Sidney M. Glazer, St. Louis Mo., made oral argument for the appellant. Morris A. Shenker, St. Louis, Mo., was with him on the brief.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., made oral argument for the appellee. William H. Webster, U. S. Atty. St. Louis, Mo., was with him on the brief.

Before SANBORN, VAN OOS-TERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

On February 5, 1959, Philip A. Foley, hereinafter referred to as "defendant," was indicted in two counts for attempting to evade and defeat income tax due and owing by him and his wife for the years 1952 (Count I) and 1953 (Count II) by filing false and fraudulent joint income tax returns. The indictment alleged that the 1952 return showed a net income of $4,053.27, and a tax due thereon of $500.22, whereas the true net income for that year was $8,684.78, upon which there was owing a tax of $1,597.-

66;[1] that the return for 1953 showed a net income of $4,231.34, and a tax due thereon of $672.96, whereas the true net income for that year was $11,805.60, with a tax owing thereon of $2,627.62.[2]

After a jury trial of nine days, the defendant was found guilty on both counts and thereafter sentenced to a prison term of three years under each count to run and terminate concurrently, and was fined $2,500 under each count, or a total of $5,000.

On this appeal the defendant does not challenge the sufficiency of the evidence to sustain the conviction, therefore a detailed résumé of the evidence is unnecessary. We have examined and considered the voluminous record, consisting of six volumes of testimony, and find that the factual statement appearing in defendant's brief fairly and accurately summarizes the pertinent and relevant evidence.

The defendant is a lawyer, and has been engaged in the practice of his profession, with offices in Clayton, St. Louis County, Missouri, since 1926, when he was admitted to the bar. He could properly be described as a general practitioner and while he was admitted to practice before the Treasury Department, the bulk of his practice consisted of divorce cases and the defense of persons accused of crimes.

Concededly, the defendant failed to keep adequate records for the purpose of recording his income and deductible expenses; rather, he relied upon his memory and bank book which disclosed his deposits. Apparently he would total the deposits for the year, deduct therefrom items which were not taxable, such as amounts due clients included in the deposits and then he would add an arbitrary amount which ran between $1,500 and $2,100 estimated by him to represent cash receipts. In order to reconstruct the true income, the Government brought into court numerous former clients of the defendant who testified as to the amounts paid by them. Of the total of 130 witnesses who testified in behalf of the Government, 113 were former clients and others called to establish legal fees paid to defendant during the two years in question. There were, in addition, stipulations received in evidence of 58 other clients who had paid defendant legal fees during the period under consideration. It was also stipulated that 7 attorneys who had officed in the same suite with defendant, paid defendant $2,254.63 in 1952 and $2,637.69 in 1953, as their share of rent, secretarial assistance and office expense. None of the amounts so received by defendant was reported as gross income, but it appears that defendant deducted as a business expense only his share of these expenses, the amount not covered by payments from other attorneys.

The trial of the case was somewhat unusual, in that with the exception of one Roy Graham, there was no effort made by defendant to discredit any of the witnesses or their testimony. Thus, the issue which was litigated and resolved by the jury was whether the misstatement of income was the result of unintentional error or mistake on the part of one wholly unfamiliar with the exacting requirements of the revenue laws, as contended by defendant, or whether the defendant filed false and fraudulent returns for the purpose of evading taxes, which was the Government's position throughout the trial.

Graham, the controversial witness, was a professional bondsman and he also operated a tavern known as "Graham's

---

1. Evidence established proof of $8,036.04 net income with tax due of $1,438.06 for 1952.

2. Evidence established proof of $9,700.89 net income with tax of $2,017.26 for 1953.

    The indictment charged violations of § 145(b) of the 1939 Internal Revenue

Code, 26 U.S.C.A. § 145(b) (§ 7201 of the 1954 Code, 26 U.S.C.A. § 7201). "Any person * * * who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony, * * *."

Grill." Until about August, 1953, Graham and defendant were close friends. During the year 1952 Graham gave defendant five checks totaling $2,837.35, and in 1953 five checks totaling $3,154.38. Graham testified that defendant had represented him and taken care of his legal matters since 1933, without compensation; that in 1952 Graham found himself in a financial position where he was able to pay defendant for past services, and although not requested by defendant to do so, Graham paid defendant the amounts represented by the checks above mentioned. Graham emphatically denied that he had a partnership arrangement with defendant whereby the latter was to receive one-half of the net income derived by Graham from signing appearance bonds. On the other hand, defendant's version was that he had been instrumental in procuring bond business for Graham, in that he had, in early 1952, prevailed on the Sheriff of St. Louis County, Missouri, to permit Graham to sign appearance bonds; that in consideration for this service Graham had agreed to split all net bond income with the defendant, that is, all expenses were to be first deducted, and, as an additional consideration, Graham agreed to pay defendant's share of the tax on the income received by the latter.[3]

Not only did defendant fail to report the income so received from Graham, but concededly he did not deposit any of the checks in his bank account. Defendant testified that Graham gave him small amounts of cash from time to time, and each time defendant received a check, he would endorse it and Graham would give him the cash difference above those sums previously advanced. Graham made a record of the checks so furnished and endorsed them "Graham's Grill," after which they were deposited in Graham's bank account. Graham did not produce any of his records at the trial, claiming that they had been destroyed after the records had been fully and completely investigated and checked by the Internal Revenue Service and after Graham had paid additional taxes on his income.

The third point briefed and presented by defendant which we shall first consider, goes to the failure of the district court to dismiss the indictment. By a pre-trial motion upon which evidence was heard, the defendant urged that the indictment of defendant shortly before expiration of the statute of limitations and the unreasonable delay in presenting the matter to the grand jury, constituted a deprivation of defendant's right to a speedy trial in violation of the Sixth Amendment.[4] Defendant also relies upon Rule 48(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides:

"If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

■■ The rule is firmly established that the protection afforded by the Sixth Amendment has no application until after a prosecution is instituted, and here the defendant concedes there was no delay in bringing him to trial subsequent to the time the indictment was filed. See Hoopengarner v. United States, 6 Cir., 270 F.2d 465, 469; D'Aquino v. United States, 9 Cir., 192 F.2d 338, 350, certiorari denied 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343.

Neither do we find any substance in the contention that there was unnecessary delay in presenting the charge to

---

3. Defendant testified that one of the 1953 checks, in the amount of $1,000 was endorsed and returned to Graham in consideration for a $937.50 check of Foley's, payable to Foley's secretary, which had been cashed for her by Graham. Both she and defendant testified that this represented back salary due her.

4. The Sixth Amendment provides that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial.

the grand jury within the purview of Rule 48(b).[5] On this score the defendant's argument is that the rule was violated inasmuch as the criminal investigation was commenced in the early part of January, 1954, but the indictment was not returned until February 5, 1959, and that the lapse of approximately five years constituted an unusual and unnecessary delay. He points to evidence taken upon the hearing of the motion to dismiss tending to prove that the investigation was completed in 1954 and 1955, urging that the case was allowed to lie dormant, was abandoned or ensnarled in administrative proceedings thereafter.

██ Under the facts as developed in the trial, we conclude that defendant has little standing to complain of the period of investigation and certainly if there was a delay, we find no justification for holding that it was unreasonable. From the factual background which we have previously summarized, it is obvious that investigation and preparation for presentment of the indictment was of necessity a commodious task. The defendant failed to turn over any books or records to the investigating agents and it became necessary for them to reconstruct defendant's income for the taxable years in question. From the nature of defendant's law practice, this required locating and interviewing former clients who had paid fees during the years in question. Some of these clients were deceased, many had removed themselves from the State of Missouri, several of the divorce clients had re-married, and in many cases, it was necessary to establish individual fee payments through the testimony of two or more witnesses. The magnitude of the Government's task is illustrated by the large number of witnesses who were called to testify regarding payments made to defendant and by the stipulations of many others which were entered in the record. There is no evidence of intentional or vexatious delay on the part of the Government or of unreasonable harassment of the defendant. We have considered the cases of Petition of Provoo, D.C.D.Md., 17 F.R.D. 183, affirmed per curiam, 350 U.S. 857, 76 S. Ct. 101, 100 L.Ed. 761, and Taylor v. United States, 98 U.S.App.D.C. 183, 238 F.2d 259, which are relied on by defendant. They are clearly distinguishable, involve elements not present in the circumstances here, and cannot be controlling. The suggestion is made that in prosecutions for tax evasion a defendant is generally punished more by the harassment and anxiety before trial than by the sentence following conviction, and that here "the defendant has had potential charges of tax evasion hanging over his head since 1954." As we have observed, there is no proof of harassment. Anxiety might result from the knowledge that the Government is investigating the financial affairs of a taxpayer and this anxiety might hang as a "Sword of Damocles." Nevertheless, such emotional disturbance without more is no legal justification for permitting the accused to escape prosecution. Furthermore, motions to dismiss for lack of prosecution are addressed to the sound discretion of the trial judge and under the circumstances here we find absolutely no basis for ruling that there was an abuse of discretion in denying defendant's motion to dismiss the indictment. United States v. McWilliams, 82 U.S.App.D.C. 259, 163 F.2d 695; United States v. Research Foundation, D.C.S.D.N.Y., 155 F.Supp. 650, 654, 656.

Without meaning to downgrade other claims of error, it is apparent to us that defendant's main point is that the trial court erred in refusing to instruct on

5. The indictment was returned within the period of the statute of limitations. Title 26 U.S.C.A. § 6531 provides:

"No person shall be prosecuted, tried or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years * * *

"(2) for the offense of wilfully attempting in any manner to evade or defeat any tax or the payment thereof;"

lesser offenses under § 145(a) of the Internal Revenue Code of 1939 which, in summary, provides that willful failure to pay taxes, make returns or declarations, keep records, or to supply information are· misdemeanors. Defendant offered instructions which would have authorized a conviction of the misdemeanors of willful failure to supply correct information, willful failure to keep records and failure to pay the correct tax, the theory being that these misdemeanors are necessarily included as lesser offenses of § 145(b) within the meaning of Rule 31(c), Federal Rules of Criminal Procedure.[6]

■ We approve the court's action in refusing to instruct on the lesser offenses. It will be seen that subsection (a) of § 145 deals with willful failure and omissions, whereas subsection (b) is designed to punish for willful attempts to evade or defeat a tax. Here defendant's dereliction did not constitute a failure or omission—he was charged with the affirmative act of filing false and fraudulent returns for a purpose proscribed by § 145(b). It is apparent that Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, upon which the defendant relies, does not control the question before us. In Spies, the indictment charged a willful attempt to defeat and evade the tax by willfully *failing to file a return* and willfully *failing to pay the tax* as the means to the felonious end. The case was reversed upon the ground that an improper and incomplete instruction had been given upon the felony charge, inasmuch as the trial court had refused to instruct that an affirmative act was necessary to convict under § 145(b). In ruling, in effect, that two misdemeanors under § 145(a) do not automatically constitute or prove the felony proscribed by § 145(b), the Supreme Court recognized the principle that a felony may, and frequently does, include lesser offenses, and that "this felony may include one or several of the other offenses against the

revenue laws." 317 U.S. at page 497, 63 S.Ct. at page 367. Of significance here is the pronouncement at pages 498–499 of 317 U.S., at page 368 of 63 S. Ct.:

> "The difference between the two offenses [§ 145(a) and § 145(b)], it seems to us, is found in the *affirmative action* implied from the term 'attempt,' as used in the felony subsection. * * * We think that in employing the terminology of *attempt* to embrace the gravest of offenses against the revenues, Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." (Emphasis supplied.)

There was no such error here in instructing upon the felony offense. The trial court carefully pointed out to the jury the necessity of a willful and affirmative attempt to evade taxes, cautioning that mere negligence or carelessness, the failure to keep books and records or the mere filing of a false or fraudulent return, or the willful failure to pay an income tax, were not of themselves sufficient to constitute an offense under the indictment.

■ To our mind, the crucial element in determining whether the lesser offenses of § 145(a) are "necessarily included" in the felony charged, turns upon the language of the indictment before us. The charge, and the focal issue, involved an affirmative act—whether the defendant *filed false and fraudulent returns,* i. e., grossly understated and underreported his income, for the unlawful and felonious purpose of attempting to evade

---

6. Rule 31(c) provides: "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

payment of income taxes. The Government's case did not rest upon willful failure to pay taxes, willful failure to keep records or willful failure to supply correct information. The defendant's trial position was that there was no intent to evade payment of taxes, that the under-reporting of income resulted from carelessness and lack of knowledge of the requirements of the internal revenue laws and from the belief that the income defendant had received from Roy Graham was tax free. As observed, this issue was submitted to the jury in proper instructions.

■ This Court considered the question of lesser offense instructions in Dillon v. United States, 8 Cir., 218 F.2d 97, certiorari granted 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248 and dismissed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796, and Janko v. United States, 8 Cir., 281 F.2d 156, petition for certiorari pending, ruling in each instance that the lesser offense instructions were not justified by the facts. In Dillon, we carefully pointed out the distinction between omissions covered by § 145(a) and willful affirmative acts within the purview of § 145(b). Our ruling at page 101 of 218 F.2d is apropos to the situation before us:

"The indictment did not charge, nor did the evidence show, that defendant merely failed to pay a tax or failed to make a return. On the contrary, the evidence showed that a return was filed and a tax was paid. No evidence was offered that defendant failed to file a return or to show the willful failure to pay the tax when due, except insofar as willfulness was involved in the charged willful and felonious attempt to evade the payment of taxes owed. Hence the universal rule that it is not error to fail to instruct on an offense not presented by the evidence applies. There consequently was no error in failing to instruct that defendant might have been convicted of either of the misdemeanors defined by § 145(a), of willful failure

to pay a tax when due or willful failure to file a return."

In Janko, supra, in considering the portent of the lesser offense section of the 1954 Code, § 7203 [formerly § 145 (a)] and where the identical contention was presented, we reiterated the proposition that there is a considerable difference between mere failure or omission and affirmative acts committed for the graver purpose of attempting to evade taxes. See 281 F.2d at pages 163, 164. See also, and compare United States v. Kafes, 3 Cir., 214 F.2d 887, 890, 891, certiorari denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697; Lee v. United States, 9 Cir., 238 F.2d 341, 346; United States v. Jannuzzio, D.C.Del., 184 F.Supp. 460.

We have also given consideration to United States v. McCue, D.C.Conn., 160 F.Supp. 595, relied upon by defendant, which, to say the least, presented an unusual factual situation. There, after the indictment charging a felony under § 145(b) was filed, there were proceedings which led to the filing of an information charging defendant with the misdemeanor of willfully failing to supply correct information to the revenue department. A nolo contendere plea was accepted to the lesser offense and the defendant was fined and sentenced thereunder. After the defendant had paid his fine, and was serving under his term of probation, the Government, by further proceedings, apparently for the purpose of renewing prosecution under the indictment, sought to vacate the misdemeanor conviction under Rule 35 of the Federal Rules of Criminal Procedure. Admittedly, in ruling that further prosecution under the § 145(b) indictment was barred by principles of double jeopardy, the court used language which sustains defendant's position here. However, in view of the special situation there, and under the facts and circumstances presented by this record, we find McCue of no persuasion.

While there may be situations where a defendant charged under the felony section of the revenue laws is entitled to lesser-offense instructions, we are con-

vinced that there was no basis on this record for the submission of the lesser offenses as contained in the instructions which were offered by the defendant.

Our conclusions and disposition of the issue on the foregoing basis makes it unnecessary to rule upon the question of whether the court properly refused the lesser offense instructions on the theory that the misdemeanor violations were barred by the statute of limitations.

We have for final disposition the contention that the trial court committed prejudicial error in instructing the jury with respect to the defendant's credibility and the weight and effect of his testimony. The complained of instruction is set out in full in the margin.[7] More precisely, the defendant asserts that the court's charge in the respect noted constituted unfair infringement of his right to testify for himself as a competent witness and that the instruction effectively destroyed the presumptive competency of his testimony.[8] The argument is that since a defendant is not required to take the stand, no adverse inference may be drawn if he fails to do so and that likewise, when a defendant elects to testify, no adverse reflection may be drawn from such an election.

■■ Emphasized here is the assertion that the instruction was improper because it directed the jury's attention to "the very vital interest the defendant has in the outcome of this case," and the alleged intimation to the effect that defendant would "naturally commit perjury." It has long been recognized that while a court "is not at liberty to charge the jury directly or indirectly that the defendant is to be disbelieved because he is defendant," an instruction may properly point out the defendant's special interest in the case. Reagan v. United States, 1895, 157 U.S. 301, 310, 15 S.Ct. 610, 613, 39 L.Ed. 709. The Government has cited numerous cases where instructions pointing out the special character of a defendant's testimony have been ruled proper. In this Circuit, see Schaefer v. United States, 8 Cir., 265 F.2d 750, 754, certiorari denied 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82; Shoulders v. United States, 8 Cir., 218 F.2d 290, 292, 293.

Neither are we persuaded that the trial court's reference to perjury constituted error. When the charge is read as a whole, it appears that this statement was introduced perhaps in an excess of caution on the part of the trial judge. Certainly there is nothing in the instruction which disparages, ridicules or downgrades the competency of defendant's testimony. While the reference to perjury was unnecessary, defendant has failed to demonstrate that he was thereby prejudiced. As observed, there was very

7. The court's charge on this issue was as follows:

"When a defendant in a case of this kind takes the stand—which he has a perfect right to do—he is subjected to all the obligations of a witness, and his testimony is to be treated like the testimony of any other witness; that is to say, it will be for you to say, remembering the matter of his testimony, and the manner in which he gave it, his cross-examination, and everything else in the case, whether or not he told the truth. Then, again, it is for you to remember—you have a perfect right to do so, and it is your duty to do so—the very vital interest the defendant has in the outcome of this case.

"Now, this does not mean, and I do not mean to imply that whenever a man is accused of a crime and takes the stand in behalf of himself, that he will naturally commit perjury; but, of course, as a defendant places himself as a witness upon the witness stand, he stands like any other witness.

"But, his interest, or bias, or anything else that may affect his testimony, is a matter which, of course, you as jurors should consider. Therefore, I say to you, in considering the testimony of the defendant, you are to consider the very vital interest which he has at stake in this case."

8. Title 18 U.S.C.A. § 3481 provides:

"In trial of all persons charged with the commission of offenses against the United States * * * the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him."

little, if any, controversy with respect to the facts—the overwhelming evidence was in the main uncontradicted by the defendant and aside from the conflict with regard to Graham's testimony, the main thrust of defendant's testimony was to establish his lack of knowledge of bookkeeping, the tax laws, etc., and to deny evil motive and intent.

On examination of the entire proceedings, we are convinced that defendant has received a fair and impartial trial.

The judgment is

Affirmed.