**Norbert D. TERLIKOWSKI, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**James SLAWEK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 18667, 18668.**

United States Court of Appeals Eighth Circuit.

June 30, 1967.

Rehearing Denied No. 18667 July 27, 1967.

Rehearing Denied No. 18668 July 31, 1967.

502

Peter J. Lindberg, Minneapolis, Minn., for appellant Norbert D. Terlikowski.

Thomas G. Drake, Minneapolis, Minn., for appellant James Slawek.

Stanley H. Green, Asst. U. S. Atty., Minneapolis, Minn., for appellee. Patrick J. Foley, U. S. Atty., Minneapolis, Minn., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Appellants seek review of their convictions for breaking into a United States Post Office in Minneapolis, Minnesota, injuring property of the United States and conspiring to commit said offenses in violation of 18 U.S.C. §§ 2115, 1361 and 371.[1] Their sentences were imposed to run concurrently on the three counts and concurrently with sentence imposed December 28, 1964 by the State of Illinois then being served for armed robbery.

The Minneapolis Post Office was burglarized on January 18, 1964; the indictment was found on February 3, 1966; and appellants were removed from the Illinois State Prison in June of 1966 upon writs of habeas corpus *ad prosequendum.* They were arraigned in the District Court in June and July of 1966 and brought to trial October 26, 1966, resulting in their convictions.

Other points are urged and will be discussed, but the main thrust of appellants' argument is grounded upon their contention of deprivation of fair and impartial trials and due process in violation of the Fifth Amendment to the Constitution, denial of their Sixth Amendment rights to speedy trial, and refusal of the court to dismiss the indictment under Fed.R. Crim.P. 48(b).

■■ Appellants' motions for dismissal of the indictment for undue delay rest on asserted loss of memory coupled with inability to obtain witnesses after an inordinate lapse of time. They do not indicate, however, what witnesses were unavailable but stress their asserted inability to recall occurrences on any particular date, such as the date of the Post Office burglary. There was a long period, approximating two years and five months, from the date of the offenses until appellants were brought to trial, but four and one-half months of this period occurred between the date of the indictment and the date of trial, and no contention is made of prejudicial delay during this period. The trial court noted that state charges growing out of the same offenses were promptly lodged against appellants and a preliminary hearing had thereon in municipal court which undoubtedly indelibly implanted in the minds of appellants their activities in Minneapolis that weekend. The District Court examined the record of the municipal court proceedings and examined *in camera* the testimony presented to the United States grand jury finding that the latter disclosed testimony of appellants' connection with the crimes not theretofore within the knowledge of the Government from the state preliminary hearing. This testimony linked appellants with the crime and there is nothing in the record indicating that the federal government was in the least dilatory in its investigation culminating in the indictment and prosecution, or that the delay was motivated by the Government for its own advantage or to in any fashion weaken or hamper a fair defense. During all of this time, the Government through Post Office agents

---

[1]. Also charged in the indictment were Norbert Derengowski and Edward C. Slawek, but the charges against them were dismissed shortly prior to commencement of this trial.

and others continued its investigation resulting in production at trial of thirty-one witnesses to establish the charges. This case from the standpoint of elapsed time between the offenses and the formal indictment, the extended investigation, the numerosity of witnesses, coupled with lack of suggestion that any prejudicial delay occurred between the date of the indictment and the trial, is factually akin to Foley v. United States, 290 F.2d 562 (8th Cir. 1961). There we held it to be settled law that the Sixth Amendment has no application except from date of commencement of the criminal prosecution, and reliance on Fed.R. Crim. P. 48(b) lacks substance where there is no evidence of intentional or vexatious delay on the Government's part. We said in *Foley* at pages 565–566:

"The rule is firmly established that the protection afforded by the Sixth Amendment has no application until after a prosecution is instituted, and here the defendant concedes there was no delay in bringing him to trial subsequent to the time the indictment was filed. (Citations omitted.)

"Neither do we find any substance in the contention that there was unnecessary delay in presenting the charge to the grand jury within the purview of Rule 48(b). On this score the defendant's argument is that the rule was violated inasmuch as the crim-

inal investigation was commenced in the early part of January, 1954, but the indictment was not returned until February 5, 1959, and that the lapse of approximately five years constituted an unusual and unnecessary delay. He points to evidence taken upon the hearing of the motion to dismiss tending to prove that the investigation was completed in 1954 and 1955, urging that the case was allowed to lie dormant, was abandoned or ensnarled in administrative proceedings thereafter.

\* \* \* \* \* \*

"\* \* \* Furthermore, motions to dismiss for lack of prosecution are addressed to the sound discretion of the trial judge and under the circumstances here we find absolutely no basis for ruling that there was an abuse of discretion in denying defendant's motion to dismiss the indictment. (Citations omitted.)"

The above principles of law are lucidly articulated by Judge Burger in Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), citing *Foley* and a number of cases from other jurisdictions as well as legal writings.[2] The issue was also decided adversely to appellants' contentions here in Hoopengarner v. United States, 270 F.2d 465 (6th Cir. 1959).[3]

█ It was noted in Crow v. United States, 323 F.2d 888 (8th Cir. 1963), that a prosecutor is entitled to a reason-

---

2. "Appellant's claim relating to the delay between the date of the offense and the commencement of criminal prosecution is not covered by Rule 48(b) of the Federal Rules of Criminal Procedure, (citations omitted) or by the Sixth Amendment, but rather it relates to the running of the applicable statute of limitations. (Citations omitted.) Appellant does not contend that this prosecution is barred by any statute of limitations." Nickens v. United States, supra, at 809–810.

3. The court in Hoopengarner v. United States, supra, said at page 469:
"\* \* \* There is no contention made that there was any undue delay in the prosecution of the action after the complaint or information; and, accordingly, this case presents no valid issue of violation of constitutional rights

under the Sixth Amendment.
"As to Rule 48(b) of the Federal Rules of Criminal Procedure, the District Court is authorized to dismiss the indictment, information, or complaint, providing there has been an unnecessary delay in presenting a charge to a grand jury or in filing an information against a defendant who has been held to answer to the District Court, or if there is unnecessary delay in bringing a defendant to trial. There was no unnecessary delay in the prosecution of defendant after he had been held to answer. As to delay from the time of the commission of the offense to the commencement of the criminal proceedings, that is controlled by the Statute of Limitations, which is not here in question."

able time to investigate an offense for the purpose of determining whether a prosecution is warranted, and also for preparation of a case for submission to the grand jury.

Our attention has been called to Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), wherein it was held a seven month period in that case was too long a time to wait between the offense and the indictment, and reversed the conviction on Fifth Amendment due process grounds. *Ross* was a narcotics case and the Government relied solely on the testimony of one undercover agent who testified from his notes taken contemporaneously with his purchase from the defendant. Defendant contended he could not remember anything about the particular day or the transaction with the undercover agent. There is no similarity of fact in the case at hand, and it would be completely unrealistic to apply the rule of *Ross* and other similar cases here.[4]

We do not intend any implication that an inordinate or prejudicial delay between an offense and prosecution could not constitute a denial of due process. Such would be the case if the Government deliberately utilized delay to strengthen its position by weakening that of the defense or otherwise impairing defendant's right to a fair trial. Fed. R. Crim.P. 48(b) specifically authorizes the trial court to dismiss an indictment if there is unnecessary delay in presenting the charge to the grand jury or in bringing a defendant to trial.[5] In the event a trial court abuses discretion, it would be a reviewing court's duty to

reverse. In the instant case, however, the information furnished the trial court at hearing justified its overruling the motions to dismiss the indictment. Our consideration of the record leads us to the conclusion that there is no merit in appellants' contentions on this issue.

Both appellants assign as error the trial court's denial of their respective motions for severance. Appellants were convicted on each of three counts of an indictment growing out of the same transaction. Terlikowski premises his argument on an erroneous assertion that the evidence of conspiracy is weak and that he was not seen with Slawek until the day after the burglary. The record evidence conclusively shows the contrary to be the fact. Terlikowski checked into the Capp Towers Motel in Minneapolis on January 17, 1964. He and some companions were heard discussing whether Slawek had yet arrived in Minneapolis. Early in the afternoon on the Saturday of the burglary, Terlikowski rented an automobile from the National Car Rental, and at five o'clock that afternoon picked up Slawek at the home of Nancy Swan. The burglary occurred at approximately ten o'clock that evening, and thereafter Slawek appeared at the Terlikowski home followed shortly by Terlikowski. The baby sitter positively identified both defendants as well as the time they arrived at the Terlikowski home, where they remained only long enough to wash and change their clothes, and departed together in a taxi. Slawek's automobile was seen parked in front of Terlikowski's home on the night of the burglary. Ter-

---

4. Cited to us as applying the *Ross* rule are Hood v. United States, 365 F.2d 949 (D.C.Cir.1966); Morrison v. United States, 124 U.S.App.D.C. 330, 365 F.2d 521 (1966); United States v. Sanchez, 361 F.2d 824 (2nd Cir. 1966); United States v. Hammond, 360 F.2d 688 (2nd Cir. 1966); Roy v. United States, 123 U.S.App.D.C. 32, 356 F.2d 785 (1965); Jackson v. United States, 351 F.2d 821 (1965); Cannady v. United States, 122 U.S.App.D.C. 120, 351 F.2d 817 (1965); Mackey v. United States, 122 U.S.App. D.C. 97, 351 F.2d 794 (1965); United States v. Godfrey, 243 F.Supp. 830 (D. D.C.1965). These cases are factually inapposite to the case at hand.

5. Fed.R.Crim.P. 48(b).
 "(b) By Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

likowski and Slawek were seen together on the following Monday.

As the burglars departed from the rear of the Post Office, some young people who lived next door to the Post Office and others who were just arriving at the residence noticed the suspicious flight of some men from the rear of the Post Office in an automobile and, noting the license number, alerted the police. The police located the car abandoned a block from Terlikowski's home, accounting for Slawek's entering the Terlikowski home a few minutes before Terlikowski. The following morning Terlikowski reported to the rental agency that the car had been stolen, but by this time it had been recovered by the police who had advised the rental agency to make no disclosure of this fact to Terlikowski. There is nothing weak about the Government's evidence in any aspect of this case, nor in the positive, uncontradicted evidence of Terlikowski and Slawek's being together on the afternoon of the crime and immediately following it.

The only other ground Terlikowski advances as justification for severance is based on Nancy Swan's testimony about her relations with Slawek. She testified that she stayed at the motel with Slawek in Minneapolis and lived with him in Chicago and Miami. It would be completely unrealistic to speculate that this relationship in any wise influenced the jury against Terlikowski when the evidence showed that Terlikowski, a married man, was engaged in misconduct of the same nature with his girl friend, and voluntarily told a cab driver of his indiscretions and of having fallen in love with a beautiful blonde. The trial court in the light of these facts observed that the suggestion by Terlikowski of immoral conduct on the part of his co-defendant as having prejudiced the jury against him so as to prevent his having a fair trial seemed utterly frivolous. We agree.

There is no basis to find error in the court's denial of Slawek's motion because of an admission made by Terlikowski that he and three others burglarized the Post Office. Terlikowski did not confess and his admission did not mention Slawek —only that he and three others burglarized the Post Office. This merely confirmed the undisputed evidence that three or four men were engaged in the burglary. Such was the testimony of the young people who witnessed the flight from the rear of the Post Office.

■ Fed.R. Crim.P. 8 provides for joinder of offenses and defendants as was properly done here. Fed.R. Crim.P. 14 authorizes the trial court to grant a severance if it appears that prejudice *might result to the defendant.* This statutory authorization, however, is a discretionary one and a trial court's denial of motion for severance is not ground for reversal unless there is a showing of prejudice amounting to an abuse of the court's discretion. United States v. Sopher, 362 F.2d 523 (7th Cir. 1966); *Johnson v. United States,* 356 F.2d 680 (8th Cir. 1966); United States v. Gardner, 347 F.2d 405 (7th Cir. 1965), cert. denied, 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529 (1966); Walton v. United States, 334 F.2d 343 (10th Cir. 1964), cert. denied, 379 U.S. 991, 85 S.Ct. 706, 13 L.Ed.2d 612 (1965); Slocum v. United States, 325 F.2d 465 (8th Cir. 1963); Fisher v. United States, 324 F.2d 775 (8th Cir. 1963), cert. denied, 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049 (1964); Butler v. United States, 317 F. 2d 249 (8th Cir. 1963), cert. denied, 375 U.S. 838, 84 S.Ct. 77, 11 L.Ed.2d 65 (1963).

■ The record reveals that the trial court gave meticulous care and consideration to the motions for severance. We are convinced there was no abuse of discretion on the trial court's part and that no injustice accrued from the joint trial.

Appellant Slawek contends that he was illegally removed from the State of Illinois and not accorded due process under Fed.R. Crim.P. 40. Slawek was brought to Minnesota for the federal trial from the State of Illinois where he was incarcerated in the penitentiary. In denying Slawek's motion to dismiss, the court

resolved the issue in the following language:

"These defendants were brought to this State on a writ of habeas corpus ad prosequendum. They allege that their removal is unlawful and that the conventional removal proceedings under Rule 40, Federal Rules of Criminal Procedure, should have been followed. However, Section 2241(c) (5), Title 28, U.S.C.A., provides that a writ of habeas corpus may be issued if it be necessary to bring a prisoner into court 'to testify or for trial.' The State of Illinois, where these men were incarcerated in a State Institution, as a matter of comity, consented, after an indictment of these defendants in Federal Court in Minnesota, to turn them over to the Federal Government on a writ of habeas corpus ad prosequendum issued out of this Court. These defendants have no just cause for complaint when the State of Illinois recognized the validity of the writ. See United States [ex rel. Moses] v. Kipp, [7 Cir.] 232 F.2d 147."

■ Slawek contends that the court was without authority to issue the writ as it was not within its jurisdiction, citing 28 U.S.C.A. § 2241(a).[6] The Supreme Court, however, in Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), resolved this issue against appellant's contention in holding there was no territorial limitation on the authority of a federal district court to issue a writ of habeas corpus *ad prosequendum* to deliver a prisoner from a distant state for trial under an indictment pending in the federal district court. This interesting opinion reviews the history of the writ since the Judiciary Act of 1789, and on page 618, 81 S.Ct. at page 342, the Court stated: "Thus, the *ad prosequendum* writ, necessary as a tool for jurisdictional potency as well as administrative efficiency, extended to the entire country."

Slawek was indigent and when brought to Minnesota an attorney was appointed to represent him. His constitutional rights were in no fashion violated. He was not eligible to bail by reason of the detainer of the State of Illinois and, furthermore, made no showing that he could have posted bail. In our view, Slawek was before the District Court under a proper writ and in any event no prejudice resulted to his defense stemming from the procedure utilized.

■ Appellant Slawek challenges the court's order denying him the right to subpoena certain witnesses as an indigent defendant as being violative of his constitutional rights and Fed.R. Crim.P. 17 (b).[7] The rule requires that an indigent defendant make a satisfactory showing that the witness requested is necessary to an adequate defense. Primarily, defendant wanted to show by the Sheriff of Dade County, Florida, and his records that Slawek used the name of James Flynn while in Florida, the same alias he used in Minneapolis on the weekend of the Post Office burglary. He likewise wanted to bring the manager of the Driftwood Motel with his records to show Slawek's use of the alias James Flynn while registered at that motel. He sought the presence of postal inspectors of Dade County, Florida, as well as his attorney in Florida to show arrest and subsequent release of Slawek in 1964.

6. "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had."

7. "(b) Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

Additionally, he sought to subpoena a psychologist to testify that one loses his memory through passage of time. He also sought the presence of Norbert Derengowski and Edward Slawek to show that charges against them arising out of the Post Office burglary were dropped in 1964. The court permitted him a subpoena for Roberta Collins, wife of Gerald Collins, for the purpose of impeaching the testimony of her husband. She was present at the trial, but defendant did not use her as a witness.

None of the testimony sought would have been material or relevant to Slawek's defense. The United States Attorney offered to admit that Slawek used the name James Flynn in 1964 in Florida, and, as a matter of fact, there was evidence at trial to this effect. The fact that he was not extradited from Florida in 1964 has no relevance to his guilt or innocence, whether he had reference to the state charges or the federal charges. Neither would dropping of the charges against Derengowski and Edward Slawek in 1964 have any relation to or be proper evidence at this trial. Both of these desired witnesses were at the time of this trial inmates of penal institutions, and if for any reason the Government felt it did not have a sufficient case against them, dismissal of their charges would not be material or relevant in the present case. Slawek would infer from all of this that he saw no reason to prepare a defense, but the fact is that the state charges are still pending against him in Minneapolis and that in the instant trial he not only did not take the stand in his own behalf, but did not offer a single witness in his defense. His counsel candidly admitted to the jury in his opening statement that he had no defense other than he could not recall any occurrences on that date or weekend of the Post Office burglary for which he was being tried. This is incredible in the light of the surrounding circumstances as ultimately developed by the Government's investigation and proven by a number of witnesses at trial.

His request for a psychologist to testify that a person loses his memory through the passage of time is frivolous. In the first place, the trial court would not have been warranted in permitting such a generalization on the part of a psychologist. Rule 17(b) was not promulgated to afford an indigent defendant a right to subpoena witnesses at Government expense whose testimony clearly would be lacking in materiality to the trial at hand. The object of the rule is to afford the trial court authorization to provide an indigent defendant with witnesses at Government expense when the necessity is shown that their presence is required to insure a fair and adequate defense. The decision on this issue is necessarily vested in the discretion of the trial court and a reviewing court should not reverse unless the exceptional circumstances of the case indicate that defendant's right to a complete, fair and adequate trial is jeopardized. We said in Reistroffer v. United States, 258 F.2d 379, 396 (8th Cir. 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959):

> "It is well settled that Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., under which the motion for subpoena was made, does not accord the indigent defendant an absolute right to subpoena witnesses at government expense. There is and must be wide discretion vested in the District Court to prevent the abuses often attempted by defendants. This Court will not disturb the exercise of the discretion unless exceptional circumstances compel it. Gibson v. United States, 8 Cir., 53 F.2d 721, 722."

To the same effect, see United States v. Zuideveld, 316 F.2d 873, 881 (7th Cir. 1963), cert. denied, 376 U.S. 916, 84 S. Ct. 671, 11 L.Ed.2d 612 (1964), and Murdock v. United States, 283 F.2d 585, 587 (10th Cir. 1960).

The trial court carefully considered Slawek's motion for witnesses and properly denied only those which would have resulted in a useless and abusive issuance of process at Government expense.

Finally, both appellants argue that because of an insufficiency of evidence the court erred in denying their motions for acquittal, or, in the alternative, for new trials. The Post Office was burglarized by breaking into a rear door and two Government safes were damaged and the contents, consisting primarily of stamps and money approximating a value of $11,000.00, were taken. This burglary occurred between 10:00 and 10:30 p. m. on Saturday night, January 18, 1964. Both appellants were registered in Minneapolis motels under aliases. Terlikowski is a former Chicago policeman but had a home in Minneapolis and Slawek was from Chicago. Terlikowski was heard to discuss with other companions the rental of a car. This, however, was before Terlikowski and Slawek got together in Minneapolis. Terlikowski rented a car from National Car Rental and in doing so had to produce his driver's license. Terlikowski did meet with Slawek on the day of the crime, picking him up at Slawek's girl friend's home sometime after 5:00 p. m. Both appellants arranged to meet their girls later on in the evening. The Peavey family home was on the lot adjacent to the Post Office and Kenneth Laing and two young companions drove to the rear of the Peavey home just prior to the departure of the burglars. As they approached, young Peavey ran out, having observed what was taking place, and called to his friends to get the license number of the car. Laing saw a man who resembled Terlikowski running out the rear door carrying a "satchel or bag." There were two or three others in a white Galaxie and when Terlikowski got in with the bag, they hurriedly drove away. The young people tried to follow but lost them and only succeeded in getting the license number. Young Peavey immediately reported this to his mother who notified the police. A prowl car spotted the Galaxie at about midnight,

towed it in, and notified the rental agency. Terlikowski called the car rental agency the following Monday morning, reporting the car as stolen. The odometer reading squared with the Government's theory of use of the car in the burglary and abandonment a block from Terlikowski's home.

Slawek's car was seen parked in front of Terlikowski's home during this period. Shortly after the burglary, Slawek appeared at Terlikowski's with Terlikowski following about five minutes later. They were both dirty as could be expected from activities connected with safe-breaking in the Post Office; they cleaned up, changed their clothes, called a cab and departed. The cab driver reported picking them up at 10:50 p. m. They met their respective girl friends and later Monday went to Chicago. In a day or two, Nancy Swan met them in Chicago and she and Slawek drove to Miami Beach and spent several days. They used the same car that was parked at Terlikowski's home on the evening of the burglary.

This burglary had all the earmarks of a professional job and, had it not been for the young people's witnessing the flight from the scene of the crime and obtaining the license number, might well have been a successful venture. The Government was able, however, by intensive investigation over an extended period to put the pieces together resulting in the total evidence upon which these cases were based. The case against Terlikowski could hardly have been stronger, absent a positive eyewitness to the crime or a formal confession. Two witnesses, however, testified as to admission of his participation in the crime along with three others, but he did not mention the names of the others. On the basis of this strong evidence, the trial court in its order overruling Terlikowski's motion observed: "The grounds asserted by this defendant for a new trial are bereft of any substance whatsoever." [8]

---

8. The following excerpt is from the court's order overruling Terlikowski's motion for new trial:

"The grounds asserted by this defendant for a new trial are bereft of any substance whatsoever. The evidence as to his guilt of the three counts of the indictment fully and impellingly sustains the verdict. The variance or conflicts in the testimony as to the exact time

The evidence against appellant Slawek was not as strong, as there was no evidence as to the description of those in the car leaving the scene of the crime except that referred to concerning Terlikowski, and it was Terlikowski who rented the car used in the burglary. Obviously, Slawek had driven to Minneapolis to meet Terlikowski; Terlikowski and his other companions had discussed rental of a car and Slawek's expected presence in Minneapolis; the two were together late the afternoon of the burglary and immediately thereafter; Slawek left his car parked in front of Terlikowski's home during the commission of the crime; and he arrived at Terlikowski's home immediately after the crime, dirty and unkempt, and was positively identified by Terlikowski's niece. Shortly thereafter, he was with Terlikowski in Chicago and was met there by his Minneapolis girl friend who accompanied him to Florida, where he used the same alias as he used in Minneapolis. Slawek offered no evidence whatsoever in his own defense and the undisputed evidence amply sufficed to link him with the crime and warranted the jury in establishing his guilt.[9]

of the burglary and whereabouts of the defendants at such time or times were questions for the jury to determine. There is ample evidence in the record to sustain a finding that this defendant was at the post office in question at the time it was burglarized and was a principal participator therein."

9. The trial court in its order overruling Slawek's motion for judgment of acquittal based on asserted lack of substantial evidence summarized his participation as follows:

"Defendant urges that he was found guilty by a mere association with Terlikowski. Undoubtedly his association with Terlikowski during the period when these offenses were committed played an important part in the jury's determination of his guilt. Viewing the testimony, however, in the most favorable light for the Government, there are ample circumstances which sustain his guilt beyond a reasonable doubt. It is not denied that Terlikowski picked the defendant Slawek up at Nancy Swan's home between five and six o'clock P.M., on the night of January 18, 1964. The burglary in question was committed that night sometime after ten o'clock P.M. That Terlikowski was one of the men who was in the rented white Galaxie Ford at the time of the burglary is firmly established. Moreover, there is testimony by one of the government witnesses that at the time of the burglary there were three or four persons in the car. During this time, the car that James Slawek was then driving was parked in front of the Terlikowski residence. Shortly after the burglary Slawek and Terlikowski came to the latter's home with their hands dirty and their clothes unkempt. They remained at the Terlikowski home only long enough to wash and change clothes and then departed together in the same taxi. The white Galaxie Ford allegedly stolen as reported by Terlikowski was found by the police less than a block from the Terlikowski home about midnight on January 18, 1964. After leaving Terlikowski, James Slawek went to Nancy Swan's home, and later they registered at the Ambassador Motel as Mr. and Mrs. James Flynn. On January 22, 1964, Slawek was in Chicago and Nancy Swan flew from Minneapolis to meet him there. Terlikowski likewise left for Chicago at or about this time and met Slawek. Later that week, Slawek and Nancy Swan drove to Miami, Florida, in the Slawek car and registered there as Mr. and Mrs. James Flynn. The car used on the trip to Miami by Slawek was the same car which was parked out in front of the Terlikowski home in Minneapolis on the night of the burglary. Certainly, flight immediately after the crime was committed was a factor for the jury to consider.

"There was an utter absence of any testimony offered by the defendant Slawek to contradict the strong circumstantial evidence as to his involvement in this burglary. To suggest that the failure of this defendant to offer any defense whatsoever was due to the frailty of his own memory and that of any witnesses he might call by reason of the lapse of time since the crime was committed, taxes one's credulity, particularly in that it appears that early in 1964 defendant Terlikowski was charged by the State with this post-office burglary and had a preliminary hearing in Municipal Court in Minneapolis. That charge is still pending. Slawek also knew at that time that the police were investigating his connection with this offense. Certainly, these cir-

Entwined with Slawek's argument is the suggestion that the court erred in its review of the evidence in the charge to the jury relating to the testimony of Nancy Swan; testimony that Terlikowski was at the scene of the burglary and that Slawek's car was in front of the Terlikowski home on the evening in question; and testimony as to when both appellants arrived at Terlikowski's home on the evening of the crime. Primarily, the complaint is that there were some variances in the testimony, but we have examined same and find nothing in the court's comments outside the scope of the evidence. The court advised the jury to disregard any part of its summarization of evidence that contradicted the jury's recollection. Furthermore, there was no objection made at the time.

 Slawek also suggests that the District Attorney made improper remarks in his closing argument for the sole purpose of obtaining a conviction.[10] The record does not support this charge.

Our careful review of the closing argument impresses us with its complete propriety and it was in no way prejudicial. No objection was made to the argument at trial.

It is settled law that a reviewing court must view the evidence upon a criminal conviction in the light most favorable to the Government, and further that objections to instructions and argument of counsel must be properly raised in the trial court. Petschl v. United States, 369 F.2d 769 (8th Cir. 1966.) [11]

The plain error rule is not applicable here and we note that Judge Nordbye, an able and experienced judge, was most tolerant and thorough in resolving every issue presented. His orders on the many motions reflect his independent legal research and his consummate fairness.

The judgments of conviction of both appellants are affirmed.

---

cumstances must have alerted Slawek as to the importance of the dates in question and thus impress his memory with respect thereto."

10. As an example, Slawek now criticizes the following statement made by the District Attorney in argument:
"The further thing that I want you to keep in mind before we get into the evidence, as you understand, there are two men on trial here today. You have heard testimony of four men being at the Post Office. You have heard four names mentioned by various witnesses as being together that week end. You are only to consider the two men that are on trial here today. Now, the Government can present its case to you any way it wants, and the fact that there are only two men on trial now instead of four that you have heard about, the two men is the only thing that should be considered by you, not the fact there were four men and why are only two on trial. Right now, these two men are on trial and those are the two [you] should be considering."

11. *Petschl* stands for both propositions.
"We are satisfied that when the evidence is viewed in the light most favorable to the Government, as is required by established appellate rules, an adequate evidentiary basis exists to support the conviction.

\* \* \* \* \*

"The short answer to all of the contentions hereinabove set out is that since none of the asserted errors were properly raised in the trial court, such errors are not open for review absent a plain error situation. Recently in Aggers v. United States, 8 Cir., 366 F. 2d 744, we reaffirmed our many prior holdings that under Rule 30, Fed.R. Crim.P., a proper exception or request was essential to preserve for review any claimed error in instructions, stating:
" 'The proper foundation for establishing a basis for questioning the applicable law as stated by the court in its instructions is by request for instruction or exceptions to instructions given. Absent such foundation, asserted errors in instructions are not entitled to consideration upon appeal absent a Rule 52(b) plain error situation.' 366 F.2d 744, 748.
"We have also repeatedly held that charges of misconduct on the part of counsel are not open for review unless appropriate objection or motion for mistrial is made in the trial court. Patterson v. United States, 8 Cir., 361 F.2d 632, 636; Birnbaum v. United States, 8 Cir., 356 F.2d 856, 866." 369 F.2d at 770, 773.