89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clozell JOHNSON-EL, Jr., Defendant-Appellant.
 No. 95-1142.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1996.
 
 Before: JONES, NELSON, and NORRIS, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Defendant appeals his jury conviction of mailing a threatening communication in violation of 18 U.S.C. § 876 (Count I) and threatening to assault and kill a United States District Court Judge in violation of 18 U.S.C. § 115 (Count II), as well as his sentencing by the district court to sixty months on Count I and three months on Count II, to be served concurrently. For the following reasons, we will affirm both the conviction and the sentence.
 
 
 2
 * In 1979 Defendant Clozell Johnson-El, Jr. was sentenced to fifteen years of incarceration in the Michigan State prison system. Over the course of his fifteen year imprisonment, Johnson-El initiated several civil rights complaints concerning the conditions of his incarceration, including thirty-four in the United States District Court for the Western District of Michigan. United States District Court Judge Robert Holmes Bell found many of the Defendant's complaints frivolous. Consequently, Judge Bell entered a permanent injunction against Johnson-El, prohibiting him from filing any further federal civil rights complaints without leave of the court and satisfaction of other stipulated conditions.
 
 
 3
 Approximately three weeks before his scheduled prison release date, Johnson-El wrote and mailed a letter addressed to Magistrate Judge Hugh W. Brenneman, Jr. and to the attention of Judge Bell. The letter, in pertinent part, stated:
 
 Dear Judge Bell
 
 4
 [Y]ou unfairly handled my civil rights action ... [you] accomplished your cleverly scheemed plot to indanger my life.... I will be out of prison real soon & I'm telling you we got to fight & I'm gone do my damest to whip the stew out of you. I'm not playing I'm gone beat yo dirty judicial ass & I might even kill you. aint none of you Marshalls can stop me either I wouldnt care how may or what type of automatic weapon. I might just blow up the Courthouse.
 
 
 5
 TR at 24-25; Trial Ex. 2-A. Upon receipt of the letter at the courthouse, the Deputy U.S. Marshal initiated a "threat investigation" by contacting the Federal Bureau of Investigation. The F.B.I. agent assigned to the matter interviewed Johnson-El on several occasions and received no admission of responsibility for the letter. Notwithstanding, F.B.I. laboratory tests revealed Johnson-El's palmprints, fingerprints, footprints and a toeprint on the letter and envelope.
 
 
 6
 The grand jury indicted Johnson-El charging him with: (1) knowingly and intentionally mailing a threatening communication; and (2) threatening to assault and kill Judge Bell on account of the performance of his official duties. Johnson-El was dissatisfied with the refusal of his appointed attorney to request issuance of subpoenas to twenty-six questionably relevant witnesses, including Judge Bell, Senators Joseph Biden and Donald Riegle, and State Senator Virgil Smith. Consequently, Johnson-El requested substitute counsel. When the request was denied, Johnson-El asserted his right to represent himself, continually insisting on the subpoena of Judge Bell and others. Asked by the court about the relevancy of Judge Bell's proposed testimony, the Defendant responded that he wished to question the judge about one of his [Johnson-El's] civil rights cases in 1991 and the constitutionality of the permanent injunction. The court did not issue the requested subpoena.
 
 
 7
 Prior to trial, Johnson-El unrelentingly denied responsibility for writing or mailing the letter. In his opening statement, however, he acknowledged for the first time that he had written the letter, not as a threat, but to get Judge Bell's attention. J.A. at 26, 29. He insisted that the letter "was an exaggeration, it wasn't nothing other than just exaggeration to get my day in court," and later testified that he was not serious about blowing up the courthouse or killing Judge Bell because he "was locked up and it was impossible for [him] to have done it." J.A. at 29, 88. Further, a number of times during the trial, Johnson-El mentioned the acceptance of responsibility provisions in the sentencing guidelines and maintained that he was assuming responsibility for his actions. See e.g. J.A. 22-23, 67-68, 73, 75, 100, 105. Although Johnson-El admitted writing the letter, he nonetheless denied having intended the import of its language. The jury found him guilty of both counts of the Indictment.
 
 
 8
 At sentencing, the district court acknowledged Johnson-El's limited admission and ultimately found him remorseful. The court, however, declined to give Johnson-El credit for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and sentenced him accordingly.
 
 II
 
 9
 In this appeal we face two issues: whether the district court erred in denying Defendant's request to subpoena Judge Bell to testify; and whether the district court erred in its interpretation and application of U.S.S.G. § 3E1.1.[1]
 
 
 10
 * We review the district court's decisions concerning the admission of testimony and other evidence, including a decision to deny compulsory process, under the abuse of discretion standard. United States v. Moore, 954 F.2d 379, 381 (6th Cir.1992) (citing Dorsey v. Parke, 877 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831 (1989)). "In making its determination of whether or not issuance of the subpoena is warranted, the district court is vested with wide discretion, and a reviewing court should not reverse unless the exceptional circumstances of the case indicate that defendant's rights to a complete, fair and adequate trial is jeopardized.' " United States v. Moore, 917 F.2d 215, 230 (6th Cir.1990) (quoting Terlikowski v. United States, 379 F.2d 501, 508 (8th Cir.), cert. denied, 389 U.S. 1008 (1967)), cert. denied, 499 U.S. 963 (1991) (internal citations omitted)).
 
 
 11
 On appeal, Johnson-El argues that he was entitled to have Judge Bell testify at his trial to assist in his defense that the letter was neither intended nor perceived as threatening. This position fails for two reasons. First, nothing in the record indicates that Johnson-El requested to have Judge Bell testify for this purpose. Indeed, when questioned by the district court, Johnson-El repeatedly insisted that he wanted Judge Bell to testify about unrelated civil rights complaints, the constitutionality of the injunction and other judicial actions. See J.A. at 66-67, 71-72, 75. Based on these answers, the district court declined to subpoena Judge Bell. Because such testimony, if elicited, would not have been relevant to the trial, the district court's decision was clearly within its discretion.
 
 
 12
 Second, even if Johnson-El had stated he wanted Judge Bell to testify concerning his state of mind when he read the letter, such testimony would be neither relevant nor necessary in this case. The test to determine the applicability of the crimes with which Johnson-El was charged is not dependent on his subjective intent, nor the subjective response of the recipient, but rather "whether" an ordinary, reasonable recipient who is familiar with the content of the letter would interpret it as a threat of injury.' " United States v. Malik, 16 F.3d 45, 49 (2d Cir.) (quoting United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir.1973), cert. denied, 415 U.S. 933 (1974)), cert. denied, 115 S.Ct. 435 (1994); see generally United States v. Smith, 928 F.2d 740, 741 (6th Cir.) (subjective intent not required under § 115), cert. denied, 502 U.S. 587 (1991); United States v. Vincent, 681 F.2d 462, 464 (6th Cir.1982) (applying same standard to 18 U.S.C. § 871). Hence, it is not imperative for the recipient of a letter to testify, so long as the jury is presented with sufficient evidence to determine how a reasonable recipient under the circumstances would react. We find that such evidence was available to the jury in this case.
 
 
 13
 Some courts have allowed for the threatened person to be called as a witness in certain instances. See United States v. Davis, 876 F.2d 71, 73 (9th Cir.) (per curiam), cert. denied, 493 U.S. 866 (1989) (the judge's reaction to threatening letters was admissible); Malik, 16 F.3d at 49-50, (to shed light on its purpose, an ambiguous letter can be supported by the recipient judge's testimony who had knowledge of the context of the letter). However, in both Davis and Malik the witness was necessary because the language of the threat was ambiguous. We find the language in Johnson-El's letter to be unambiguous and clear on its face; hence, Davis and Malik are not controlling.
 
 
 14
 Finally, the Sixth Amendment requires that compulsory process be provided to obtain witnesses in a defendant's favor. Judge Bell, however, was not shown to be a potentially favorable witness for Johnson-El, regardless of his testimony. Consequently, Johnson-El's right to compulsory process was not infringed. See Moore, 917 F.2d at 231 (witness's proposed testimony of little relevance to appellant's case).
 
 B
 
 15
 Johnson-El's second argument is that the district court should have granted him a two level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Appellate review of fact finding under the sentencing guidelines is governed by the clearly erroneous standard. 18 U.S.C. § 3742(e). "Acceptance of responsibility is a factual determination left to the sound discretion of the district court, and the court's determination on this issue is not to be disturbed unless clearly erroneous." United States v. Nichols, 979 F.2d 402, 414 (6th Cir.1992), aff'd, 114 S.Ct. 1921 (1994). Nonetheless, legal conclusions, such as the interpretation of the district court's authority in applying the guidelines, are reviewed de novo. See generally United States v. Sanders, 18 F.3d 1488, 1490 (10th Cir.1994).
 
 
 16
 Johnson-El asserts that throughout the trial he maintained that he was "accepting responsibility" for the letter, but going forward with the trial only to challenge the constitutionality of Judge Bell's conduct. In fact, Johnson-El relates that the court acknowledged that he had "accepted all the responsibility ... [s]ince the first day [the court] saw [him]." J.A. at 105. Lastly, Johnson-El proffers that "the fact that an accused puts the government to the full burden of trial, and maintains his innocence throughout the trial, in and of itself, does not prevent a court from finding that the accused had accepted responsibility." Johnson-El's Br. at 15.
 
 
 17
 Johnson-El's assertions aside, his "acceptance of responsibility" was an acknowledgement only of his writing and mailing the letter. The probation officer who prepared the report agreed that the Defendant had admitted to writing and mailing the letter, but pointed out that Johnson-El had nonetheless denied the element of criminal intent--an essential factual element of guilt--and still had not expressed remorse for his behavior. The government argues that Johnson-El has never clearly demonstrated acceptance of responsibility for his offense. The government further suggests that Johnson-El's admission that he wrote and mailed the letters was not equal to contrition for the crime with which he was charged. In admitting the acts but denying the mens rea, we find that Johnson has failed to accept responsibility as required by the guidelines.
 
 
 18
 In our review of the record we have found that the district court wisely recognized Johnson-El's attempts to accept responsibility and that the court found Johnson-El to have expressed remorse at sentencing. The district court proceeded with understandable caution in working through the labyrinth created by the Sentencing Guidelines, but ultimately did not make a lucid finding on the Defendant's acceptance of responsibility. If the district court had made a clear finding on that issue, it would be subject to profound deference in this court's review. See Nichols, 979 F.2d at 414. Nonetheless, as mentioned above, it is clear that Defendant did not accept responsibility as intended by the guidelines. Our reasoning for this conclusion, however, is based on an interpretation of the guidelines which we express differently than the district court.
 
 
 19
 In denying an adjustment under section 3E1.1 the district court stated,
 
 
 20
 This adjustment is not intended to apply to a defendant, to Clozell Johnson-El here, who puts the Government to its burden of proof at trial by denying the essential factors of factual elements of guilt and is convicted.
 
 
 21
 J.A. at 120. We agree. The court then proceeded to state:
 
 
 22
 I think that expression of remorse had to come long before the trial. You have expressed remorse here, but I don't find anything in the record that shows an expression of remorse before the trial. And that's the problem. That's the legal problem. It gives me a lot of trouble. It gives me a heartache to have those kind of provisions which tie my hands.
 
 
 23
 J.A. at 120 (emphasis added). Contrary to the apparent thinking of the district court, the sentencing guidelines do not create a legal problem that ties a court's hands if it finds that a defendant expresses remorse, although not before trial. Indeed, Application Note 2, which the court stated that it was applying, specifically allows that a defendant "may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." U.S.S.G. § 3E1.1, Application Note 2. We find no language in the guidelines or case law that would require a defendant to express remorse before trial in order to qualify for acceptance of responsibility credit.
 
 
 24
 Certainly under Application Note 2, a court's determination that a defendant has accepted responsibility should be based primarily upon pre-trial statements and conduct; but Application Note 2 does not demand conduct exclusively before trial. In any event, Application Note 2 is applicable only in rare situations. This case does not involve one of those rare instances. Indeed, Johnson-El never admitted the element of intent and thus there was never an admission of factual guilt. Johnson-El's conduct before, during, and after trial could not warrant a reduction in his sentence under this guideline. Accordingly, notwithstanding its seeming restrictive view of guideline and comments, the district court was correct in not granting the acceptance of responsibility reduction under U.S.S.G. § 3E1.1, including Application Note 2.
 
 III
 
 25
 Based on the foregoing we AFFIRM the Defendant's conviction and sentence.
 
 
 
 [1]
 Although in its brief the government contested the jurisdiction of the court based on the apparent untimeliness of the notice of appeal, at oral argument the government conceded jurisdiction and withdrew the challenge to the timely filing of the appeal. Accordingly, we need not address that claim