## CARBO *v.* UNITED STATES.

No. 72.   Argued November 16, 1960.—Decided January 9, 1961.

*A. L. Wirin* and *William B. Beirne* argued the cause for petitioner.   With them on the brief was *Fred Okrand.*

*Beatrice Rosenberg* argued the cause for the United States.   With her on the brief were *Solicitor General Rankin* and *Assistant Attorney General Wilkey.*

Mr. Justice Clark delivered the opinion of the Court.

The sole question in this case is whether the United States District Court for the Southern District of California has jurisdiction to issue a writ of *habeas corpus ad prosequendum* directing a New York City prison official to deliver petitioner, a prisoner of that City, to California

for trial on an indictment pending in the California court.[1] Both the District Court and the Court of Appeals have held that such jurisdiction does exist. 277 F. 2d 433. Recognizing that the effective administration of criminal justice required our decision on the point, we granted certiorari, 363 U. S. 802. We affirm the judgment.

Petitioner, one of five defendants indicted on September 22, 1959, in the District Court for the Southern District of California on charges of extortion and conspiracy,[2] was arrested in Baltimore, Maryland, where he posted bond returnable to the California court. Before appearing in California pursuant to his obligation under the bond, petitioner pleaded guilty to three misdemeanor charges in New York City and was sentenced to serve a two-year term in the New York City Prison, in addition to payment of a fine. Pursuant to a writ of *habeas corpus ad prosequendum* issuing from the California court to the New York City prison authorities, the petitioner appeared in custody before that court, was arraigned and pleaded not guilty to the indictment. Upon petitioner's request the court ordered that he be returned to the New York City Prison in custody in order to obtain counsel and that he thereafter be returned[3] to California in time for trial on

---

[1] The Government has raised the question of petitioner's standing to challenge the writ (cf. *Ponzi* v. *Fessenden*, 258 U. S. 254), which point it waived by stipulation in the Court of Appeals. In light of the circumstances under which the case reaches us we do not believe that the point is well taken.

[2] 18 U. S. C. §§ 875, 1951.

[3] The order was as follows:

"Defendant appears without counsel and requests permission to enter his plea and be permitted to return to New York and obtain counsel there and return here for trial.

"Defendant Carbo pleads not guilty . . . .

"Court Orders cause as to Defendant Carbo set for trial with co-defendants on March 29, 1960, 9:30 AM, and directs that Defendant Carbo be returned to New York for the purpose of obtaining counsel and be returned here in time for trial."

the indictment set for March 29, 1960. In order that petitioner might meet the obligation of his bond, as well as that of the latter order, the court, on March 16, 1960, again issued a writ of *habeas corpus ad prosequendum* to the New York City prison official directing the return of the petitioner for trial on March 29, 1960. On the same date and before it could be served, the petitioner moved to quash the writ. His sole ground of objection was that the United States District Court for the Southern District of California had no power to issue the writ to an officer located outside of its territorial limits. The contention is bottomed on the language of 28 U. S. C. § 2241 as codified in 1948.[4] We have concluded that the issuance of the writ of *habeas corpus ad prosequendum* was within the jurisdiction of the court as authorized by the Congress in § 2241.

This is the first time this Court has undertaken a construction of the statutory authority for the issuance of writs of *habeas corpus ad prosequendum* since Chief Jus-

---

[4] 28 U. S. C. § 2241 provides:

"(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

.        .        .        .        .

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

"(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

"(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right`. . . ; or

"(5) It is necessary to bring him into court to testify or for trial."

tice Marshall, in *Ex parte Bollman,* 4 Cranch 75 (1807), interpreted the language of the First Judiciary Act, 1 Stat. 81–82 (1789). It seems, therefore, both appropriate and in our view necessary to first trace the course followed by congressional action granting judicial power to issue writs of *habeas corpus* generally.

Section 14 of the First Judiciary Act gave authority to

"all the . . . courts of the United States . . . to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And . . . either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of commitment.—*Provided,* That writs of *habeas corpus* shall in no case extend to prisoners in gaol, unless where they are in custody, under or by colour of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." 1 Stat. 81–82 (1789).

We are indeed fortunate to have the benefit of the close scrutiny to which Chief Justice John Marshall subjected § 14 in *Ex parte Bollman, supra.* Initially, the Chief Justice observed that "for the meaning of the term *habeas corpus,* resort may unquestionably be had to the common law; but the power to award the writ by any of the courts of the United States, must be given by written law." 4 Cranch, at 93–94. Mindful perhaps of his own observation the preceding year that "There is some obscurity in the act of congress," *Ex parte Burford,* 3 Cranch 448, at 449, he then proceeded to analyze the meaning of the writ as described in § 14. He recognized that the term *habeas*

*corpus* "is a generic term" including many species of that writ. It encompassed, he concluded, in addition to the Great Writ (*habeas corpus ad subjiciendum,* for an inquiry into the cause of restraint) the writ *habeas corpus ad prosequendum.* The "Great Chief Justice" noted, however, that when used in the Constitution,[5] that is, "when used singly—when we say *the writ of habeas corpus,* without addition, we most generally mean that great writ" traditionally used to test restraint of liberty. *Ex parte Bollman, supra,* at 95.

The Chief Justice, following the English practice, particularly 3 Blackstone, Commentaries *129, noted that the writ *ad prosequendum* was necessary to remove a prisoner in order to prosecute him in the *proper jurisdiction* wherein the offense was committed. In his discussion of the common usage of the various writs, he recognized in *Ex parte Bollman, supra,* that the Congress had without qualification authorized the customary issuance of the writ *ad prosequendum* by a jurisdiction not the same as that wherein the prisoner was confined.

Following the Judiciary Act of 1789, there came a series of legislative amendments dealing with habeas corpus, but, significantly, all related solely to the usages of the Great Writ.[6] Simultaneously with the expansion of the Great Writ, there developed from the common source, § 14 of the first Judiciary Act, a second line of statutes—the "All writs" portion of § 14, in large measure the first sentence of that section, devolved by a process of addition along a course parallel to but separate from the habeas corpus provisions. Upon revision of the federal statutes in 1874, the general power of courts to issue writs of habeas

---

[5] Art. I, § 9, cl. 2.

[6] The habeas corpus provisions of § 14 of the original Judiciary Act, 1 Stat. 81 (1789), were amended by 4 Stat. 634 (1833), 5 Stat. 539 (1842), 14 Stat. 385 (1867), R. S. §§ 752–753 (1875), and 43 Stat. 940 (1925).

corpus, which was a part of the express grant in the first sentence of § 14, disappeared from the language of the statutes derivative from the all writs portion of the first sentence, R. S. § 716 (1875), which, after further amendment, is known today as 28 U. S. C. § 1651.[7] This general power was, however, retained in the first of the three reorganized sections of the Revised Statutes dealing with habeas corpus, R. S. § 751 (1875),[8] and served as the modern version of the authority for writs *ad prosequendum* upon which Marshall had relied in *Ex parte Bollman*.

The second section in the 1875 Revision of the laws on habeas corpus, R. S. § 752, authorizing issuance of the Great Writ by justices and judges, included the jurisdictional limitation [9] which had been imposed for the first time [10] in 1867, 14 Stat. 385. The motive for that limitation can be traced to the position reportedly taken by Chief Justice Chase in rejecting an application for the Great Writ from a prisoner on the ground that he was incarcerated outside his circuit.[11] Mindful of the position taken

---

[7] R. S. § 716 (1875) : "The Supreme Court and the circuit and district courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

[8] R. S. § 751 (1875) : "The Supreme Court and the circuit and district courts shall have power to issue writs of habeas corpus."

[9] R. S. § 752 (1875) : "The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty."

[10] Actually, the 1842 extension of the Great Writ's availability to imprisoned applicants, 5 Stat. 539, had imposed a jurisdictional limitation upon its issuance—power to grant applications by foreign citizens was given only to Justices of the Supreme Court, and to judges of the District Court *in the district of confinement*.

[11] This decision, unreported, would appear consonant with a legitimate inference drawn from the jurisdictional limitation expressed in

by the Chief Justice, the Senate amended the first draft of the bill expanding once again the usage of the Great Writ and inserted the phrase "within their respective jurisdictions"—an obvious limitation upon the action of individual judges and justices in exercising their power to issue the Great Writ. The debates in Congress indicate that it was thought inconvenient, potentially embarrassing, certainly expensive and on the whole quite unnecessary to provide every judge anywhere with authority to issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat.[12]

The third section in the revised arrangement, R. S. § 753, collected all the instances in which the Great Writ might issue on behalf of imprisoned applicants.

From this history it becomes obvious that the Congress had continual concern for the Great Writ—*habeas corpus ad subjiciendum.* Exclusively to it did it give attention, and only upon its issuance did it impose a limitation. The other species of the writ, including that involved here— *habeas corpus ad prosequendum*—continued to derive authority for their issuance from what had been the first sentence of § 14 of the First Judiciary Act, which was not repealed until the 1875 Revision of the Statutes at Large, when it was re-enacted as two separate and distinct sections, R. S. § 716 (all-writs) and R. S. § 751 (general habeas corpus).

The Congress had obviously made an attempt to completely separate the habeas corpus provisions from those concerning other writs. However, just as in 1789 Marshall had found authority for the writ *ad prosequendum* in the reference to habeas corpus in the first sentence of § 14, so

---

1842, cf. note 10, *supra*, that Justices of the Supreme Court should limit their considerations to applications from within their assigned circuits, just as district judges were limited to their district.

[12] Cong. Globe, Part 1, p. 730; Part 2, pp. 790, 899, 39th Cong., 2d Sess.

too in 1875 its authority was constituted in the lineal derivative of that sentence, R. S. § 751, which gave courts without jurisdictional limitation, as distinguished from individual judges, R. S. § 752, the power to issue writs of habeas corpus generally. *State* v. *Sullivan*, 50 F. 593, 598. Clearly, the use of the phrase in § 751 was generic, whereas the grant of authority to judges "within their respective jurisdictions" in R. S. § 752 was specific, meaning only the Great Writ.[13]

Thus, the *ad prosequendum* writ, necessary as a tool for jurisdictional potency as well as administrative efficiency, extended to the entire country. The Great Writ, however, designed to relieve an individual from oppressive confinement, could well have been and properly was, at least as early as 1842,[14] issuable only in the district of confinement. This was in consonance with convenience, necessity and avoidance of inordinate expense—considerations remarkably unpersuasive when viewed in light of the role of the writ *ad prosequendum*.

This same trichotomy of sections in the revised statutes, setting out the statutory authority for habeas corpus, was continued through the 1911 revision of the Judicial Code which did not affect by repeal or significant amendment the existing law on the writs.[15] In 1925, when the Judicial Code was amended, 43 Stat. 940, some attention was again paid to habeas corpus, but only to assign to individual judges of the Courts of Appeals the same power within their circuits as District Court judges had within their districts—an obvious adherence to the tradition embodied in R. S. § 752 which dealt only with the Great Writ and imposed the jurisdictional limitations on its issuance. In

---

[13] We do not decide whether the writ *habeas corpus ad testificandum* was intended by Congress to be subject to the 1867 jurisdictional limitation. Cf. *Edgerly* v. *Kennelly*, 215 F. 2d 420.

[14] See note 10, *supra*.

[15] 36 Stat. 1167.

1948, when further clarification of the United States Code [16] was thought desirable, the statute took its present form, and for the first time in the legislative history of the writ of habeas corpus there was made explicit reference to the writ *ad prosequendum* in a statute.[17] Although the three sections were merged into one, it was done only "with changes in phraseology necessary to effect the consolidation." Specifically disclaimed was any intent to change the existing law on habeas corpus. That the Revisor considered the new section to deal almost exclusively with the Great Writ, in spite of its authorization of writs *ad testificandum* and *ad prosequendum,* is obvious from his own note: "Words 'for the purpose of an inquiry into the cause of restraint of liberty' . . . were omitted as merely descriptive of the writ." [18] However, as reconstructed in § 2241, the authority of courts, as well as of individual justices and judges, was now provided in a single sentence which ostensibly imposed upon all the same jurisdictional limitation previously imposed only as to the Great Writ's issuance by individual judges.

Since from its first usage the limiting phrase had always been a qualification of the authority of individual judges to issue the Great Writ, we see no reason to read into the new codification a change of meaning specifically disclaimed by the Revisor. It is our conclusion, therefore, that the territorial limitation refers solely to issuance of the Great Writ with which the bulk of the section is concerned.

We feel that there is no indication that there is required today a more restricted view of the writ *habeas corpus ad*

---

[16] R. S. §§ 751–753 (1875) were at that time included as §§ 451–453 of 28 U. S. C. (1946 ed.).

[17] See note 4, *supra.*

[18] H. R. Rep. No. 2646, 79th Cong., 2d Sess., p. A169; H. R. Rep. No. 308, 80th Cong., 1st Sess., pp. A177–A178.

*prosequendum* than was necessary in 1807 when Chief Justice Marshall considered it. Cases reported from at least three Circuit Courts of Appeals, involving extraterritorial writs *ad prosequendum* issued both before and after the 1948 revision, *Taylor* v. *United States,* 238 F. 2d 259 (C. A. D. C. Cir.); *United States ex rel. Moses* v. *Kipp,* 232 F. 2d 147 (C. A. 7th Cir.); *Hill* v. *United States,* 186 F. 2d 669 (C. A. 10th Cir.); and perhaps four, cf. *Vanover* v. *Cox,* 136 F. 2d 442 (C. A. 8th Cir.), indicate as an accepted, or at least there unchallenged,[19] interpretation of the statutes, that the writ suffers no geographical limitations in its use.

Moreover, this construction appears neither strained nor anomalous. Much was borrowed from our English brethren. Although our own practice has limited the jurisdiction of courts and justices to issue the Great Writ, we have never abandoned the English system as to the *ad prosequendum* writ. Cf. 1 Chitty's Criminal Law 132 (1847), and 4 Bacon's Abridgment 566 (1856) for discussion of similar process. After almost two hundred years, we cannot now say it has been abandoned by a Congress which expressly said it intended to make no substantive changes. The more strongly are we led to this construction by recognition of the continually increasing importance assigned to authorizing extraterritorial process where patently desirable. Cf. Fed. Rules Crim. Proc., 4 (c)(2) and 17 (e)(1). And it is the more so here where an accommodation is so important between the federal and state authorities. *Hebert* v. *Louisiana,*

---

[19] We are not unmindful of the terse Third Circuit dictum to the contrary in *Yodock* v. *United States,* 196 F. 2d 1018, and the divergent view of at least two District Courts. However, *Phillips* v. *Hiatt,* 83 F. Supp. 935, considered § 2241 as derived solely from R. S. § 752 (1875); and *In the Matter of Karol Van Collins,* 160 F. Supp. 165, relied, without distinction, upon *Ahrens* v. *Clark,* 335 U. S. 188, which dealt only with the Great Writ.

272 U. S. 312, 315–316 (1926). That comity is necessary between sovereignties in the administration of criminal justice in our federal-state system is given full recognition by affording through the use of the writ both respect and courtesy to the laws of the respective jurisdictions.[20]

Viewed in light of this history, petitioner's reliance upon cases dealing solely with territorial limitations upon issuance of the Great Writ and the criminal process authorized by 28 U. S. C. § 1651(a), unrelated to habeas corpus, is misplaced. *Ahrens* v. *Clark,* 335 U. S. 188 (1948), is clearly inapposite as is also *United States* v. *Hayman,* 342 U. S. 205 (1952), in which habeas corpus was not even involved.[21] To the extent that lower court decisions have relied upon a contrary construction of § 2241, we disapprove of their conclusions.[22]

Even were we to have agreed with petitioner's argument, we would nonetheless be constrained to recognize that, within the modern attitude adopted in *Ex parte Endo,* 323 U. S. 283 (1944), rigid formulae, even as to the issuance of the Great Writ, may be tempered by factual considerations requiring the decision that its "objective may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court" after the suit is begun. At 307. Such facts are present here. Petitioner Carbo filed an appearance bond, and submitted himself to the jurisdiction of the District Court by his personal appearance and plea of not guilty upon arraignment. Permission for his return to New York before trial was granted only upon his promise to return

---

[20] In view of the cooperation extended by the New York authorities in honoring the writ, it is unnecessary to decide what would be the effect of a similar writ absent such cooperation.

[21] That case, as well as *Price* v. *Johnston,* 334 U. S. 266, dealt with process *in the nature of habeas corpus,* the authority for which was not derived from the *habeas corpus* statutes.

[22] See note 19, *supra.*

and the condition that he do so. Implicit in his request for the order of return to New York was his consent to the obligation imposed upon his custodians to return him to California promptly. The second writ of *habeas corpus ad prosequendum,* the only writ here involved, served only as assurance to petitioner and to the court that he would not suffer default in the obligation of his bail. Just as the mere subsequent removal of the prisoner in *Endo* failed to render that application beyond the court's power to consider, so too here, in a similar vein, we cannot say that these factors have fastened onto petitioner so unsecure a leash as to suffer his escape from the jurisdiction of the California court. We must, therefore, in any event, affirm on these facts.

*Affirmed.*

MR. JUSTICE WHITTAKER, believing that, on the peculiar facts here involved, the writ, though denominated "Habeas Corpus Ad Prosequendum," had the effect of and properly should be regarded as a subpoena issued under Paragraph (a) and properly served under Paragraph (e)(1) of Rule 17 of Federal Rules of Criminal Procedure, concurs in the result of the Court's opinion.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK joins, dissenting.

I cannot agree with the decision of the Court. We have said that "apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial," *Ahrens* v. *Clark,* 335 U. S. 188, 190, and that as a general rule "a United States district court cannot issue process beyond the limits of the district." *Georgia* v. *Pennsylvania R. Co.,* 324 U. S. 439, 467–468. These principles were applied to writs of *habeas corpus ad subjiciendum* in *Ahrens* v. *Clark, supra,* where we held that the words "within their respective jurisdictions" as

used in 28 U. S. C. § 2241 created a territorial limitation upon the *habeas corpus* jurisdiction of federal judges and courts. Today we are departing from *Ahrens* and the principles on which our decision in that case rested, for the Court holds that the restrictive language of § 2241 is inapplicable to writs of *habeas corpus ad prosequendum.* I can see no justification for these variant interpretations of the same language in the same statute.

We are not helped by the tortured history of § 2241 and its antecedents, since the legislative material relied on by the Court is, to say the least, ambiguous,[1] and could be used to support inferences diametrically opposed to those drawn by the Court. For example, the fact that the first statutory reference to the writ of *habeas corpus ad prosequendum* does not appear until the enactment of § 2241 reasonably implies that none of the prior statutory history is relevant insofar as that writ is concerned, and that in codifying a unified *habeas corpus* statute in 1948, Congress intended the restrictive language of the first paragraph of § 2241 to apply to all of the writs thereafter enumerated, among which are both the writ *ad subjiciendum* and the writ *ad prosequendum.*

Although the specific question presented by this case is a matter of first impression for us, the Court concludes that, since three, and perhaps four, Circuit Courts of Appeals have upheld the issuance of extraterritorial writs *ad prosequendum,* its interpretation of the statute has

---

[1] Chief Justice Taft, speaking for the Court in *Ponzi* v. *Fessenden,* 258 U. S. 254, construed § 753 of the Revised Statutes, one of the enactments relied upon by the Court, as imposing a territorial limitation upon the District Court's power to issue a writ of *habeas corpus ad prosequendum.* He said:

"Under statutes permitting it, he [the prisoner] might have been taken under the writ of habeas corpus to give evidence in a federal court, or to be tried there *if in the same district,* § 753, Rev. Stats. . . ." *Id.,* at 261. (Emphasis added.)

become an "accepted" one. But at the same time, the Court recognizes that there are other cases in which lower courts have "relied upon a contrary construction of § 2241." In each of these cases, the District Court over-ruled a defendant's request for a speedy trial by holding that since its orders could not "run beyond its territorial jurisdiction," it had no power to issue a writ *ad prose-quendum* to bring to trial a defendant who was incar-cerated outside of its district. *In the Matter of Van Col-lins,* 160 F. Supp. 165, 167 (D. C. Me.); *Phillips* v. *Hiatt,* 83 F. Supp. 935, 938 (D. C. Del.). Cf. *Edgerly* v. *Ken-nelly,* 215 F. 2d 420 (C. A. 7th Cir.); *Yodock* v. *United States,* 196 F. 2d 1018 (C. A. 3d Cir.). In view of these cases, it can hardly be said that the Court's interpretation has become a generally "accepted" one.

The court below justified the District Court's action not upon § 2241, but rather upon the all writs statute, 28 U. S. C. § 1651. This Court refrains from relying on that section, as, indeed, it should, since the general pro-visions of § 1651 should not be read as expanding the juris-dictional limitations created by Congress with regard to a specific writ.[2] See *Price* v. *Johnston,* 334 U. S. 266, 279; *Adams* v. *McCann,* 317 U. S. 269, 272–273.

I do not say that the federal courts should not have the power to issue extraterritorial writs *ad prosequendum.* There are persuasive reasons for conferring such authority upon the courts, and Congress is perfectly free to do so. However, if the jurisdiction of the federal courts is to be expanded, and if the traditional territorial limitation

---

[2] The lower court's reliance upon *United States* v. *Hayman,* 342 U. S. 205, is misplaced. There the Court upheld the issuance of an extraterritorial writ in the nature of *habeas corpus,* saying that the authority to issue the writ under § 1651 was necessarily inferred from the provisions of 28 U. S. C. § 2255. This case does not involve § 2255; nor does it involve any other statute which could be read as conferring extraterritorial authority upon the federal courts.

is to be abandoned, then Congress should specifically so indicate.[3] But Congress has not done so, and until it does, we should not tamper with the present statutory scheme, except by following the customary procedure of adopting a special rule and submitting it to Congress for approval. Cf. Rules 4 (c)(2), 17 (e)(1), Fed. Rules Crim. Proc.

Finally, I must add a few words concerning the Court's dictum that, regardless of the interpretation placed upon § 2241, the California District Court had jurisdiction to issue the writ because the petitioner had previously appeared in that court, had entered a plea of not guilty, and had been permitted to return to New York to obtain counsel on condition that he would come back to California for trial. It is said that by virtue of this appearance, the District Court had "fastened . . . a leash" on the petitioner, and that this "leash" supported the issuance of the writ *ad prosequendum*. However, the Court ignores the fact that petitioner's initial appearance in California was also obtained by means of a writ of *habeas*

---

[3] In those few instances when Congress intended to extend the territorial jurisdiction of the federal courts, it has specifically and unambiguously indicated that intent. See Rules 4 (c)(2) and 17 (e)(1), Fed. Rules Crim. Proc., which read:

"Rule 4. Warrant or Summons Upon Complaint.

.        .        .        .        .

"(c) Execution or Service; and Return.

.        .        .        .        .

"(2) Territorial Limits. The warrant may be executed or the summons may be served at any place within the jurisdiction of the United States."

"Rule 17. Subpoena.

.        .        .        .        .

"(e) Place of Service.

"(1) In United States. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the United States."

*corpus ad prosequendum* addressed to the authorities of the New York City Prison. It ill behooves the Court to attempt to justify the issuance of an unauthorized writ of *habeas corpus* by relying upon jurisdiction that was acquired by an equally unauthorized writ.[4] This theory introduces an unwise and judicially engrafted bootstrap exception to § 2241. In my opinion, the "leash" relied upon by the Court is in reality no more than a rope of sand.

---

[4] The Court's reliance upon *Ex parte Endo,* 323 U. S. 283, is misplaced, because the District Court's initial jurisdiction in that case was unquestionably proper in all respects.