Roger S. BANDY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19306.

United States Court of Appeals
Eighth Circuit.

March 19, 1969.

Rehearing Denied April 1, 1969.

Roger S. Bandy, filed briefs pro se.

John O. Garaas, U. S. Atty., Fargo,
N. D., filed brief for appellee.

Before MATTHES, GIBSON and
LAY, Circuit Judges.

PER CURIAM.

Roger S. Bandy appeals *pro se* from a
judgment of conviction entered upon a
plea of guilty in the United States District Court for the District of North
Dakota on April 17, 1968, on a charge of
bail jumping in violation of 18 U.S.C.
§ 3146.[1] Bandy received a sentence of

---

1. The bail jumping offense was committed
in 1962 when Bandy failed to appear on
May 1, 1962, following the forfeiture of
a bail bond given in connection with a
felony. Section 3146 has been changed,
but in 1962, the date of the offense, it
read as follows:

"§ 3146. Jumping bail

"Whoever, having been admitted to
bail for appearance before any United
States commissioner or court of the
United States, incurs a forfeiture of the

bail and willfully fails to surrender himself within thirty days following the
date of such forfeiture, shall, if the bail
was given in connection with a charge
of felony * * * be fined not more
than $5,000 or imprisoned not more
than five years, or both * * *." 68
Stat. 747–748.

The above section was changed in 1966.
The present § 3146 deals with release
on bail, and the penalties for jumping bail
are set forth in §§ 3150 and 3151.

one year and one day to be served concurrently with other sentences he is now serving.[2] We affirm the judgment of conviction.

A chronology of Bandy's offenses is helpful in viewing the merits of this appeal as his prolificacy in litigation has caused most of the delay he now seeks to use as a ground for voiding the conviction entered upon his plea of guilty to bail jumping. In 1956 Bandy pleaded guilty to charges of filing false claims for income tax refunds in California and was sentenced to five years, subsequently reduced to three years. After being paroled in April 1958, he skipped to New York City where he was arrested on June 2, 1959, for parole violation and upon a complaint issued in the District of North Dakota again charging the filing of false claims for income tax refunds. On September 10, 1959, Bandy was convicted on six counts by a jury in the United States District Court for the District of North Dakota.

The District Court refused to let Bandy proceed with an appeal in forma pauperis because the Court did not think the appeal was taken in good faith. This Court appointed counsel to assist Bandy in his motion for leave to proceed in forma pauperis, Bandy v. United States, 272 F.2d 705 (8 Cir. 1959), but subsequently found the appeal to be frivolous. Bandy v. United States, 278 F.2d 214 (8 Cir. 1960). The Supreme Court vacated and remanded for a hearing of the appeal. Bandy v. United States, 364 U.S. 477, 81 S.Ct. 244 (1960). The appeal was then heard by this Court and in a thorough and exhaustive opinion, authored by Judge Vogel, Bandy's conviction was affirmed. Bandy v. United States, 296 F.2d 882 (8 Cir. 1961). Dur-

ing this period Bandy also received 11 five-year sentences, two to run consecutively and the remainder to run concurrently, in the United States District Court for the District of Idaho on a like charge of defrauding the government by filing false claims for income tax refunds.

During his appeal proceedings on the North Dakota conviction, Bandy sought release on personal recognizance. Release was denied by the District Court and by this Court. Application to Mr. Justice Whittaker was denied on June 29, 1960. A similar application was again denied by this Court on May 16, 1961. However, on August 31, 1960, bail of $5,000 was set on application to Mr. Justice Douglas. Bandy v. United States, 81 S.Ct. 25, 5 L.Ed.2d 34 (1960), but release on personal recognizance was denied by Mr. Justice Douglas in Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (1960) and 82 S.Ct. 11, 7 L.Ed.2d 9 (1961). However, on December 14, 1961, by order of Mr. Justice Douglas, Bandy was admitted to bail on his own recognizance pending his timely filing for a writ of certiorari.

On March 26, 1962, the Supreme Court denied certiorari. Bandy v. United States, 369 U.S. 831, 82 S.Ct. 849, 7 L. Ed.2d 796 (1962). Bandy failed to appear as required under the terms of his personal recognizance. He was apprehended in New York City by federal authorities on December 9, 1965, three and one-half years after he should have presented himself for service of his sentences. On January 8, 1966, Bandy was received at United States Penitentiary at Leavenworth, Kansas to commence serving his federal sentences.[3]

2. Bandy is now serving an aggregate sentence of 10 years on convictions entered in the United States District Court for the District of Idaho for filing false income tax refund claims and is also under a sentence of five years plus five years probation imposed by the United States District Court for the District of North Dakota on a similar charge of filing false income tax refund claims. Since Bandy failed to honor his appear-

ance obligations under the bail bond and was not found and apprehended by the government until December 1965, the service of these sentences commenced to run as of January 8, 1966, as determined in Bandy v. Willingham, 398 F.2d 333 (10 Cir. 1968).

3. Bandy has continued to fight his confinement for the 1959 conviction in the United States District Court for the Dis-

Bandy was indicted for bail jumping on April 6, 1966. Bandy subsequently moved on June 5, 1967, for dismissal of the indictment under Rule 48(b), Fed. R.Crim.P., contending that there had been an unreasonable delay in bringing him to trial on the charge. Judge Davies, in United States v. Bandy, 269 F. Supp. 969 (D.C.N.D.1967), while noting that over 13 months had elapsed between the return of the indictment and the motion, held that dismissal under Rule 48 (b) was not warranted, nor was Bandy's right to a speedy trial under the Sixth Amendment violated. The Court stated at 970 of 269 F.Supp.:

"If a defendant wants a speedy trial, it is his duty to ask for it. * * * Realistically, the present motion is such a request, and the Court suggests that the United States attorney for the District of North Dakota treat it as such."

Bandy appealed the ruling of the District Court, and this Court denied the appeal noting the District Court's decision was not appealable. Certiorari was denied by the Supreme Court on January 22, 1968. Bandy v. United States, 390 U.S. 912, 88 S.Ct. 831, 19 L.Ed.2d 883 (1968).

Bandy was brought to trial on the bail jumping charge on April 17, 1968, and renewed his motion to dismiss the indictment for want of prosecution. Chief Judge Register denied the motion, stating:

"A similar motion was made in this court on May 31st, 1967, before The Honorable Ronald N. Davies, which motion was denied by the Court's order, and from that order an appeal was taken to the Court of Appeals. The

appeal was dismissed on the ground, I believe, that the order was not an appealable order and certiorari was recently denied by the Supreme Court, on January 22nd, 1968. Shortly thereafter counsel for the Defendant was appointed by this Court at the Defendant's request. The Defendant was brought to the District of North Dakota for trial. At all times thereafter, any delay or postponement in the trial of this case has also been pursuant to the request of defense counsel and with the personal consent of the Defendant. Again specifically reference is made to the letter [consenting to the delays and postponements] of the Defendant to the Court dated March 8th, 1968, which is included as a part of the file.

"In view of these circumstances, it appears to the Court that there has not been any unnecessary or unreasonable delay, since this matter has previously been passed upon and, therefore, the motion is denied."

After conferring with his attorney, Bandy pleaded guilty to the bail jumping charge. He stated:

"I believe the Court has already ruled there on my issues that I would have in defense, and I believe there is no point—

\* \* \* \* \* \*

"I'm entering a plea of guilty because there's no point in going on with the trial. It's already been, you know, pretty well decided."

Bandy first contends that the bail jumping conviction was obtained in violation of his constitutional rights in that his removal from New York to Leavenworth was accomplished without accord-

trict of North Dakota. E. g., Bandy v. Attorney General, 254 F.Supp. 590 (D.C. N.D.1966), cert. denied 385 U.S. 956, 87 S.Ct. 401, 17 L.Ed.2d 308, rehearing denied 385 U.S. 1021, 87 S.Ct. 722, 17 L.Ed.2d 561, where Judge Davies considered two petitions for writs of habeas corpus and observed at 592 of 254 F. Supp.: "Bandy has had his day in court. He was afforded every constitutional protection and safeguard in the course of his trial. Litigation must one day be

finally terminated." And, Judge Davies commented, "I do not propose that this Court or its Clerk shall be further harassed by utterly useless correspondence with a convicted felon with respect to matters which are completely *res judicata*." Also see, Bandy v. United States, 396 F.2d 929 (8 Cir. 1968), where this Court affirmed Judge Register's denial of Bandy's motion for correction of sentence.

ing him the procedures prescribed in Rule 40, Fed.R.Crim.P., regarding removal proceedings—the right to a hearing before a commissioner or judge, the right to have retained or appointed counsel and admission to bail.

■■ The short answer to Bandy's first argument is found in Rush v. United States, 290 F.2d 709, 710 (5 Cir. 1961): "The provisions of Rules 5 and 40, Federal Rules of Criminal Procedure, 18 U.S.C.A. may not be availed of by a prisoner in escape status * * *." As noted by Holtzoff, "Removal of Defendants in Federal Criminal Procedure", 4 F.R.D. 455, 458 (1946):

> "Resort need not be had, however, to this [removal] procedure for the purpose of returning a prisoner who has been recaptured after an escape from custody. It has been pointed out that in such a case the court may summarily direct his return under its general power to issue writs not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction and agreeable to the usages and principles of law. In fact, in such a situation no judicial process appears necessary. The prisoner may be retaken and administratively returned to the custody from which he escaped."

Bandy's arrest in New York was pursuant to a bench warrant issued by the United States District Court for the District of North Dakota on May 1, 1962, when Bandy failed to surrender himself to commence service of his sentence on the conviction for filing false income tax refunds. ] As a fugitive from justice, Bandy was not entitled upon apprehension to a removal hearing, and he was properly removed to the United States Penitentiary at Leavenworth, Kansas to commence service of sentence.

Also, Bandy's contention is irrelevant as the indictment on the bail jumping charge was not returned until some four months after he was taken into custody to serve a sentence on a legally entered judgment of conviction; any irregularity in his removal would have no bearing on the subsequent indictment and conviction for bail jumping.

Bandy's second contention is that his transfer from Leavenworth to North Dakota was unlawful in that he was not accorded a removal hearing; further, under 28 U.S.C. § 2241(a)[4] the United States District Court for the District of North Dakota did not have jurisdiction to secure his presence before it by a writ of habeas corpus *ad prosequendum*.

■ Bandy's contention is without merit as Rule 40 is not applicable to a federal prisoner being transferred to another district to stand trial pursuant to a writ of habeas corpus *ad prosequendum*. As discussed, *infra*, one of Bandy's complaints is of the government's delay in bringing him to trial after the indictment was returned. Bandy's construction of Rule 40 would interpose unnecessary delays and costly procedures for no salutary purpose. As noted by Holtzoff, *supra*, at 468 of 4 F.R.D.:

> "The new practice, while according safeguard to the defendant against possible oppression and improvident action on the part of the prosecuting branch of the government, at the same time deprives him of a weapon which has been used for delaying and obstructing the expeditious and orderly disposition of criminal cases."

The Supreme Court, in Carbo v. United States, 364 U.S. 611, 613, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), answered Bandy's argument that the United States District Court for the District of North Dakota was without jurisdiction to issue a writ of habeas corpus *ad prosequendum* to secure his presence for trial, by holding there was no territorial limitation on the

---

4. 28 U.S.C. § 2241(a):
   "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.

The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had."

authority of a federal district court to issue the writ. The Court reviewed the history of the writ and stated at 618 of 364 U.S., at 342 of 81 S.Ct.: "Thus, the *ad prosequendum* writ, necessary as a tool for jurisdictional potency as well as administrative efficiency, extended to the entire country." Accord, Terlikowski v. United States, 379 F.2d 501, 507 (8 Cir. 1967).

▐ Bandy's third contention is that the District Court erred in denying his motion to dismiss the indictment because of purposeful and oppressive delays in bringing him to trial; Bandy especially complains of the delay from June 1967 —when the District Court denied a prior motion to dismiss on the same ground and treated his motion as a request for a speedy trial—and March 1968, when he was transferred to North Dakota for trial.

▐ We agree with the District Court's determination, see United States v. Bandy, 269 F.Supp. 969 (D.C.N.D. 1967), that Bandy's right to a speedy trial under the Sixth Amendment was not violated by the 13-month delay from the return of the indictment until Bandy first raised the motion. As stated in Davidson v. United States, 312 F.2d 163, 167 (8 Cir. 1963): "If a defendant wants a speedy trial, it is his duty to ask for it. * * * A delay which is not 'purposeful or oppressive' is not violative of the constitutional right of a defendant to a speedy trial. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393."

In the period following denial of the motion, Bandy appealed the District Court's ruling to this Court, which held the order not appealable, and petitioned the Supreme Court for a writ of certiorari, which was denied on January 22, 1968. The District Court could not proceed with his bail jumping trial during this interim—June 19, 1967 to January 22, 1968—since appellate processes were being pursued by him. Trial was then set for March 20, 1968, but due to the request of his court-appointed counsel and with the consent of Bandy the trial was postponed until April 17, 1968. Under the circumstances, the District Court correctly ruled that Bandy's right to a speedy trial was not violated.

Also, as found by the District Court, there was no showing that the delay was "purposeful or oppressive" or that the delay prejudiced Bandy's ability to rebut the government's case—the delay, which was occasioned to a large extent by Bandy's own actions, was his only defense to the charge. See, United States v. Dooling, 406 F.2d 192 (2 Cir., 1969), which in a different factual context considered the requirements of Rule 48(b): "There is no doubt that before Rule 48(b) can be invoked there must be a showing that the delay prejudiced the defendant's ability to rebut the government's case, or that the delay was caused by oppressive governmental action."

▐ Bandy's last contention is that the District Court's denial of his motion to dismiss (renewed before his trial on the bail jumping charge) eliminated his defense to the charge, and, hence, was a pretrial determination of his guilt leaving him no alternative but to plead guilty.

The argument is frivolous. Trial on the charge could not proceed until the District Court ruled on the motion to dismiss the indictment. Bandy's plea of guilty was entered knowingly and willfully after consultation with his attorney. The motion to dismiss was ruled on correctly by the District Court; if the motion embodied Bandy's only defense to the charge, then Bandy was given the opportunity to assert it in the trial court and has had review of the District Court's ruling on this appeal.

Judgment affirmed.