**UNITED STATES of America ex rel. H. Rap BROWN, Relator,**

**v.**

**Benjamin J. MALCOLM, Commissioner of Correction, New York City, Respondent.**

**Civ. A. No. 72 C 706.**

United States District Court, E. D. New York.

Nov. 13, 1972.

William M. Kunstler, New York City, for relator.

Robert A. Morse, U. S. Atty., by Henry Brachtl, Asst. U. S. Atty., Brooklyn, N. Y., J. Lee Rankin, Corp. Counsel, New York City, by Elliott P. Hoffman, Asst. Corp. Counsel, New York City, for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

H. Rap Brown, relator in the above-styled civil proceeding previously dismissed for lack of jurisdiction, has applied to punish for "contempt of this Court" United States Marshal Benjamin F. Butler and Assistant United States Attorney Edward John Boyd V, both of this District. Relator's application accuses these federal officers of having violated an "assurance" they gave the court that relator would not be moved "out of this jurisdiction" (*i. e.*, New York) before 10 P.M. on May 30, 1972.[1] The occasion for that assurance and the relationship of the federal officers, although not named as respondents, requires a brief summary of the prior proceedings and pertinent background facts concerning the relator.

In May 1968, after a jury trial in the United States District Court for the Eastern District of Louisiana, relator Brown was convicted of transporting a weapon in interstate commerce while under indictment for a crime punishable by imprisonment for a term exceeding one year.[2] He was sentenced to five years in prison and fined $2,000. The Fifth Circuit Court of Appeals vacated the sentence and remanded the case for an evidentiary hearing on claims of electronic surveillance. After holding such a hearing the trial court found Brown's conviction untainted and directed him to appear for resentencing on September 9,

---

1. There is no question that at this court's request Mr. Boyd, representing Marshal Butler, gave such an assurance so that relator would have a short period of time in which to seek a writ of habeas corpus from the New York Supreme Court, this court having declined for lack of jurisdiction.

2. See United States v. Brown, 317 F.Supp. 531 (E.D.La.1970).

1970. See United States v. Brown, *supra* n. 2. When Brown failed to appear after a succession of continuances, he was resentenced *in absentia*. The sentence *in absentia* was vacated as a violation of Brown's constitutional rights. United States v. Brown, 456 F.2d 1112 (5 Cir. 1972).

Brown was subsequently arrested in New York and indicted by the State for attempted murder. He was held in detention at Riker's Island, recovering from gunshot wounds, and remained in State custody continuously until May 30, 1972, the date he first appeared in this court.

■ The occasion for Brown's appearance here was news that he was scheduled to be resentenced by the District Court in Louisiana and the issuance of a writ of habeas corpus ad prosequendum by that court on May 18, 1972. The writ ordered the New York authorities to surrender Brown to a federal marshal so he could be brought to Louisiana for sentencing on June 1, 1972, and thereafter returned to Riker's Island.[3] In due course the writ came into the hands of United States Marshal Butler whose mandatory duty it became to execute the writ, see 28 U.S.C. § 569(b), by service upon the designated New York authority and receive temporary custody of Brown for the specified purposes.

Before the writ ad prosequendum could be executed, Brown petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 preventing his return to the Eastern District of Louisiana for sentencing.[4] The order to show cause and petition, captioned as above, named only the respondent Malcolm, New York City Commissioner of Correction, and sought an order "retaining said relator in this district and directing that he be sentenced at an appropriate federal court." The petition asserted as grounds for such relief that Brown had just recovered from extremely serious gunshot wounds; that a long automobile trip to New Orleans could only aggravate his condition; that he was in daily communication with his attorneys here preparing his defenses against criminal trials in Maryland and New York; that the federal trial judge in Louisiana had agreed to come to New York to impose sentence on relator but abruptly changed his mind; and that this was designed "to harrass him and prevent him from preparing his various defenses to the

---

3. The writ was directed "to the Warden of the New York City Correctional Institution, Riker's Island" and ordered him "to surrender the body of H. Rap Brown to the United States Marshal for the Eastern District of Louisiana . . . or to any other United States Marshal . . . to be thereafter produced by the said United States Marshal for the Eastern District of Louisiana in the United States District Court for the Eastern District of Louisiana . . . on the 1st day of June 1972, at 11 A.M. before Judge Lansing L. Mitchell . . to appear for sentencing and thereafter be returned by the United States Marshal for the Eastern District of Louisiana . . . or any other United States Marshal . . . to the New York City Correctional Institution. . . . "

4. In signing relator's order to show cause on May 27, 1972 Judge Dooling noted a possible conflict as between two federal judges (Tr. 7). It would also appear there is serious question as to Brown's standing to challenge a writ ad prosequendum. See Bullock v. Mississippi, 404 F.2d 75 (5 Cir. 1968) ; McDonald v. United States, 403 F.2d 37 (5 Cir. 1968) ; Derengowski v. U. S. Marshal, 377 F.2d 223 (8 Cir.), cert. denied 389 U.S. 884, 88 S.Ct. 144, 19 L.Ed.2d 180 (1967) ; Opheim v. Willingham, 364 F.2d 989 (10 Cir. 1966) ; Hall v. Looney, 256 F.2d 59 (10 Cir. 1958) ; United States ex rel. Moses v. Kipp, 232 F.2d 147 (7 Cir. 1956) ; Stamphill v. Johnston, 136 F.2d 291 (9 Cir.), cert. denied 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943) ; Moore v. State of Missouri, 337 F.Supp. 947 (W. D.Mo.1972) ; cf. Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922).

New York and Maryland trials as aforesaid." [5]

On May 30, 1972 Brown appeared in court with his counsel for the hearing of his petition. He was then in custody of two officers of the New York City Correction Department. Respondent Malcolm, although timely served with the order to show cause, did not appear and was not represented—inadvertently, it was subsequently learned. Marshal Butler, who had not yet executed the writ ad prosequendum in deference to the order to show cause, was present in court represented by Assistant United States Attorney Boyd.

 It became crystal clear during the hearing, through concessions of Brown's counsel, that relator was still a prisoner in State custody, that the legality or constitutionality of his custody was not being challenged and that he did not come within any of the categories of 28 U.S.C. § 2241 to which a writ of habeas corpus might extend.[6] Furthermore, no application for relief having been made to a State court, Brown did not satisfy the requirements of 28 U.S.C. § 2254(b).[7] Accordingly, Brown's petition was dismissed for lack of jurisdiction.[8] The court noted that under Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), the District Court in Louisiana had jurisdiction to issue the writ ad prosequendum and thereafter, under established rules of comity, "the matter becomes one of an accommodation between two sovereignties, the State of New York . . . and the Federal Court in Louisiana . . . " (Tr. 21–22).[9]

5. The petition concluded:
"In view of the fact that the trial judge had agreed to conduct the sentencing proceeding in New York provided relator also agreed, which he did and all of the factors set forth above, it is relator's belief that he is being deprived of his constitutional rights under the Fifth, Sixth, Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States as well as applicable federal decisional and statutory law to be forced, at the risk of his health and the defense of other serious criminal procedings against him, to make a useless and avoidable trip to New Orleans, under the circumstances set forth above."

6. 28 U.S.C.A. § 2241 reads in pertinent part:
(c) The writ of habeas corpus shall not extend to a prisoner unless—
(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
(5) It is necessary to bring him into court to testify or for trial.

7. 28 U.S.C. § 2254(b) provides:
(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

8. "THE COURT: Well, Mr. Kunstler, in order that the record may be clear, for whatever purposes you wish to pursue, I will dismiss your present application for writ of habeas corpus on the grounds heretofore stated, namely, that I believe this Court is without jurisdiction to grant relief under this writ at this time on the ground that the defendant is in State custody. The legality of that custody is not questioned, and if there is any question that pertains to custody, it should in the first instance be directed to the State Courts." (Tr. 34–35.)

9. Although the Supreme Court did not rule on the issue in *Carbo, supra,* 364 U.S. fn. 20 at 621, 81 S.Ct. 338, it has been frequently held that despite the language

Relator's instant petition seeking to punish Marshal Butler and Mr. Boyd for contempt arises out of an ensuing colloquy at the hearing quoted in the margin.[10] Faced with the prospect of Brown's imminent surrender for removal to Louisiana and the lateness of the hour (it was then after 5 P.M.), his counsel sought to stay dismissal of the petition until noon of the next day— May 31—so that Brown might apply for relief in the State court. Mr. Boyd, on behalf of the Marshal, objected pointing out that security reasons involved a special departure time and that such a delay would jeopardize the orderly transport

of the writ the State's consent is necessary to obtain custody of the prisoner. See McDonald v. Ciccone, 409 F.2d 28 (8 Cir. 1969) ; United States ex rel. Moses v. Kipp, 232 F.2d 147, 150 (7 Cir. 1956) ; Stamphill v. Johnston, 136 F.2d 291 (9 Cir.), cert. denied 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943) ; Lunsford v. Hudspeth, 126 F.2d 653 (10 Cir. 1942). Consequently, relator's counsel was advised "that the proper place to direct an appeal, if it may be called that . . . would be to the state authorities with respect to Mr. Brown's physical condition, or by application to the District Court in Louisiana, pointing out that there may be a physical problem . . . ." (Tr. 28). In *Carbo, supra*, the motion to quash the unserved writ was made in the issuing district court.

10. "MR. KUNSTLER : I was going to ask your Honor, when I interrupted, whether your Honor would stay his dismissal until noon tomorrow. I don't know what the transportation requirements are, but we could try an application to a State Judge. It would have to be in Queens because Riker's is in the Queens County area.

"THE COURT : Let me inquire. Is there any particular time of departure set?

"MR. BOYD : Yes. There is a particular time of departure set and, quite frankly, I would rather not discuss the actual time of departure for security reasons.

"A stay until twelve tomorrow would jeopardize the orderly transport of this prisoner.

"THE COURT : How about ten?

"MR. BOYD : Yes, sir.

"MR. KUNSTLER : Your Honor, what we could try to do tonight would be to draw a writ of habeas corpus and present it to one of the Queens justices sitting in Queens County. If we knew that there was to be no movement before, say, midnight, that would at least give us—all I am asking is an outside time so we don't run around for nothing. If the orderly transport did not include transporting him out of this jurisdiction before midnight tonight, we could at least

—and we have to get a stay order from that justice—at least try to get a stay order from a Queens County Supreme Court Justice, then I would at least know that it would be worth the effort. So if we could just get some assurance that we have until ten o'clock tonight, midnight, without giving us any time. We are not interested in the time itself.

"MR. BOYD : May I confer with Marshal Butler for a moment?

"THE COURT : Yes.

"(Pause.)

"MR. BOYD : We could give him until ten o'clock tonight, your Honor.

"MR. KUNSTLER : At least I know that, then I could operate within that frame of reference. Thank you, your Honor.

"MR. BOYD : So I may be perfectly clear about this, if we hear nothing by ten o'clock tonight, we are free to move Mr. Brown?

"THE COURT : Yes. As far as this Court is concerned, there is no restraint by this Court.

"MR. BOYD : Is there any restraint on the Marshals' service by this Court at the present time?

"THE COURT : None whatsoever.

"MR. BOYD : Thank you, your Honor.

"MR. KUNSTLER : But we have an assurance to ten o'clock. That's all I want to know. Ten o'clock tonight.

"MR. BOYD : If there is no restraint on the government from moving him at the present time, I want to confer again with the United States Marshal.

"THE COURT : Mr. Boyd, I did intend, if it can be suspended until ten o'clock, to have Mr. Kunstler have that much time to make the application in the State Court.

"MR. BOYD : Let me say.

"I think that will be all right.

"THE COURT : I thought that when your prior conference indicated ten o'clock, that that was it.

"MR. BOYD : That's correct, your Honor, ten o'clock.

"MR. KUNSTLER : Thank you, your Honor.

"THE COURT : All right.

"(Hearing closed.)" (Tr. 35–38.)

of Brown. At the court's request, however, the federal officers agreed that Brown would not be removed from the jurisdiction, i. e., New York, before 10 P.M. on May 30, so that his counsel would have that much time to make the application to the State court. It was made clear that no restraint was placed upon the Marshal's service of the writ in the interim and that he was free to move Brown "if we hear nothing by ten o'clock tonight" (Tr. 37).

The Marshal apparently served the writ ad prosequendum following the close of the court hearing. Brown's affidavit on this application discloses that about 6 P.M. on May 30th he was taken from the courthouse to the Federal House of Detention in Manhattan where he spent the night. He further avers that the next morning, May 31, he was driven by federal marshals to Westchester County Airport for a 7 A.M. departure for New Orleans but, due to inclement weather, the flight did not take off until between 11 and 11:30 A.M. There is no question that Brown was sentenced by the United States District Court in New Orleans on June 1 and promptly thereafter returned to State custody in New York.

While it is plain from Brown's affidavit that neither Marshal Butler nor Mr. Boyd did in fact violate the letter of the "assurance" given this court, he nonetheless insists they be punished for contempt for "an open, flagrant and atrocious violation" of its spirit. This contention is predicated upon the following facts:

About 8:30 P.M. on May 30 Brown's counsel succeeded in obtaining from Justice Harold Birns of the New York Supreme Court, Bronx County,[11] an order to show cause directed solely to Commissioner Malcolm as respondent and providing for service before 11 P.M. either at the Commissioner's office at 100 Centre Street or at the Riker's Island Administration Building. The respondent was directed to show cause why relator Brown should not be retained in Bronx County "until his health and safety permit his temporary transfer to the Eastern District of Louisiana" and ordering that Brown "be retained in this County" until the matter was heard at the Bronx County Court House at 10 A.M. on May 31, 1972.[12] Service of the order was effected shortly before 10 P.M. on May 30 at the Administration Building on Riker's Island. On the return of the order at Special Term, Bronx County, at 10 A.M. on May 31, the court was informed by an assistant district attorney that Brown was no longer in the jurisdiction.

■■ It is quite clear from the foregoing that Brown's accusations of

---

11. Riker's Island, it appears, is officially within Bronx County and thus not within the Eastern District of New York—a further complication with respect to this court's jurisdiction to entertain his habeas corpus petition. See 28 U.S.C. § 2241(d).

12. The entire order reads:

"Upon the petition of H. RAP BROWN, relator, duly certified and acknowledged by his attorney, William M. Kunstler, and all of the proceedings heretofore had herein, respondent is ordered to show cause before this Court, at a Special Term, Part I thereof, at the Bronx County Court House, 851 Grand Concourse, on the 31st day of May, 1972, at 10:00 o'clock in the forenoon thereof, or as soon thereafter as counsel can be heard, why an order should not be issued retaining said relator in this County until his health and safety permit his temporary transfer to the Eastern District of Louisiana, and granting such other and further relief as to this Court may seem just and necessary in the premises. Prior to the return date herein, relator is to be retained in this County. Service of the within order upon respondent shall be sufficient if made before 11 p. m. on the 30th day of May, 1972, by delivering a copy of same to the Office of the Commissioner of Correction, 100 Centre Street, New York, New York, or the Administration Building, Rikers Island, New York.

" /s/ Harold Birns

　　　　　　　　　J.S.C.

"New York, New York
　May 30, 1972
　　At home"

"shocking and outrageous unlawful conduct on the part of" Messrs. Butler and Boyd are devoid of any basis in fact or law and wholly unwarranted. The 10 P.M. deadline accepted by the federal officers was, of course, intended to afford Brown a limited opportunity to obtain, if he could, a consideration of his plea by his State custodians. But it was not this court's intention to require these federal officers, once the agreed deadline had passed, to act in disregard of their clear duty to fully execute the writ ad prosequendum unless they were actually constrained by an authority they would be held bound to recognize. The statutes and rules of law which govern federal officers in the discharge of their duties certainly cannot be disregarded on the basis of radio or television news broadcasts or by what appears in the morning newspapers, as Brown appears to believe. This court itself, respecting the jurisdiction of the Louisiana federal court, had declined to restrain Marshal Butler from serving the writ and in no way attempted to influence or interfere with, the conduct of the State officers involved, including the respondent Malcolm (who had not even appeared), in light of the recognized principles of comity.

Since relator admits he was not removed from the jurisdiction before 10 P.M. on May 30, 1972, and in fact remained in New York for some twelve hours thereafter, this court finds no violation of the "assurance" given by Messrs. Butler and Boyd and thus no basis for holding them in contempt assuming the court has such power in the premises. No finding is made with respect to respondent Malcolm who was not present or represented during the proceedings on relator's original petition in which this court refused to accept jurisdiction, except to note that an affidavit was filed on his behalf opposing the present application for the reasons stated in the papers submitted by the United States Attorney. This disposition renders it unnecessary to rule upon the various legal issues raised by the parties respecting the court's power to deal with contempts and the technical aspects of procedure.

Accordingly, it is

Ordered that the order signed by this court on July 21, 1972 requiring Messrs. Malcolm, Boyd and Butler to show cause why they should not be held in contempt of this court is vacated and relator's petition is dismissed.