**Chad Allen BEERS, Petitioner–Appellant,**

v.

**C. MAYE, Warden, Respondent–Appellee.**

No. 14–3242.

United States Court of Appeals, Tenth Circuit.

May 27, 2015.

Chad Allen Beers, Leavenworth, KS, pro se.

Thomas G. Luedke, Office of the United States Attorney, Topeka, KS, for Respondent–Appellee.

Before GORSUCH, McKAY, and BACHARACH, Circuit Judges.

## ORDER AND JUDGMENT [*]

NEIL M. GORSUCH, Circuit Judge.

Calculating a federal prison sentence is usually a pretty straightforward exercise. But nothing's straightforward about this case. Though Chad Beers's federal prison term began more than twenty years ago, the clock on that sentence didn't tick for long. Just a week after starting a 168–month federal prison term in Arkansas in 1994 for kidnapping and transporting stolen vehicles, Mr. Beers escaped. Within a week the law caught up to him in Nebraska, but not before he could commit a raft of new crimes, including theft and attempted robbery.

By this point, at least three sets of authorities had an interest in Mr. Beers. The United States, of course, had already won several convictions against him. Now Nebraska wanted to charge him for the crimes he committed while on the lam. And even Arkansas had an interest: soon after his first federal conviction, Mr. Beers pleaded guilty in state court there to still *other* offenses. What to do? Though the United States perhaps had a claim to custody as the first arresting sovereign, *see Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir.2002), comity leaves room for compromise. The federal government was free to relinquish any right it had to allow another sovereign to exhaust its remedies first—and that's just what the United States did. Instead of demanding his immediate return to federal custody, the fed-

---

[*] After examining the brief and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

eral government allowed Nebraska to prosecute and incarcerate Mr. Beers for his state law crimes. *See, e.g., Hall v. Looney,* 256 F.2d 59, 60 (10th Cir.1958).

Of course, federal authorities still wanted to prosecute Mr. Beers for his escape, so once Nebraska convicted and sentenced him for the state law crimes he committed there the federal government issued a writ of *habeas corpus ad prosequendum*—an ancient writ used "when it is necessary to remove a prisoner, in order ... [for him] to be tried in the proper jurisdiction." 3 William Blackstone, Commentaries *129; *see also Carbo v. United States,* 364 U.S. 611, 615–18, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). As this court's explained, the writ doesn't always operate to change custody between sovereigns; it may be used simply to "lend" a state prisoner to federal authorities for purposes of prosecution or sentencing. *United States v. Welch,* 928 F.2d 915, 915 n. 2 (10th Cir.1991). And that's what the United States sought in this case, the chance to "borrow" Mr. Beers from Nebraska so it could pursue a conviction against him for his escape.

But the loan didn't go as planned. Soon after his transfer to federal authorities in Arkansas in 1995, Mr. Beers proved himself nothing if not consistent and, yes, he escaped again. Apprehended this time in Oklahoma, Mr. Beers was shipped back to Arkansas where he was prosecuted and convicted by the federal government for both his 1994 and 1995 escapes. Once those federal proceedings finished, authorities returned Mr. Beers—still "on loan" under the writ—to Nebraska, where he then spent nearly a decade behind bars finishing his state sentence. Shortly after Mr. Beers won parole from the state in 2004, federal authorities finally regained custody and resumed his long-recessed federal prison term—a term that, thanks

to his intervening escape convictions, had ballooned from 168 months to 288.

With these strange facts in hand we can at last confront Mr. Beers's current complaint about the calculation of his federal sentence under 28 U.S.C. § 2241. Everyone accepts the United States relinquished primary custody to Nebraska in late 1994, but Mr. Beers takes the view that the federal government regained that claim in 1995 when, after his second escape and recapture, federal authorities confined him in Arkansas. So, he says, the Bureau of Prisons should credit against his federal sentence all the time he spent in Nebraska state prisons over the last decade—and in this way transform his time served there from a consecutive to concurrent term of imprisonment.

We cannot agree. As the district court explained, federal sentences presumptively run consecutively to (not concurrently with) state prison terms. *See* 18 U.S.C. § 3584(a); *Newman v. Cozza–Rhodes,* 526 Fed.Appx. 818, 822 (10th Cir.2013). The United States held Mr. Beers after his second escape only on a writ or "loan"— not a federal sentence—and the federal government returned him to Nebraska immediately after sentencing on his federal escape charges. Underscoring the point that he remained in Nebraska custody, the State took pains to credit against Mr. Beers's state sentence the time the United States held him on loan before and after his second escape. The district court's thorough order treats all this in great detail. But the short of it is we see no basis for thinking Nebraska held Mr. Beers in federal custody unwittingly for a decade and neither do we see any ground for concern that Mr. Beers served a single day behind bars without earning time towards at least one of his many sentences. The judgment is affirmed and Mr. Beers's re-

newed motion for appointment of counsel is denied.

